1    James A. McFaul, Esq.  (SBN 248670)
     David D. Cardone, Esq. (SBN 254954)
2    Bradley A. Lebow, Esq. (SBN 240608)
     DUNN DESANTIS WALT & KENDRICK, LLP
3    750 B Street, Suite 2620
     San Diego, CA 92101
4    Telephone: (619) 573-4488
     Facsimile:  (619) 255-4868
5    JMcFaul@ddwklaw.com / DCardone@ddwklaw.com
     BLebow@ddwklaw.com
6
7    Attorneys for Plaintiffs, Proposed Class Members, and
     Aggrieved Employees

8                    **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   DEXTER'S LLC, a limited liability          CASE NO.      23cv0212-MMA-AHG
     company; FRANCO FOOD
12   DISTRIBUTION dba BOMBINS, a               **AMENDED CLASS ACTION**
     California corporation;                   **COMPLAINT FOR:**
13   GASTELUM FOOD, LLC, a
     limited liability company;                  1)  **FAILURE TO PAY ALL**
14   SOPHAMANY MOCH, an                              **WAGES DUE AT TIME OF**
     individual; GERARDO FUENTES                     **DISCHARGE;**
15   SR., an individual; GERARDO                 2)  **FAILURE TO PAY MINIMUM**
     FUENTES JR., an individual;                     **WAGES;**
16   JORGE FRANCO, an individual;               3)  **FAILURE TO PAY**
     MAYTE GASTELUM, an                              **OVERTIME WAGES;**
17   individual; on behalf of themselves        4)  **FAILURE TO PROVIDE**
     and all those similarly situated,              **MEAL PERIODS;**
18                                               5)  **FAILURE TO PROVIDE REST**
                Plaintiffs,                          **BREAKS;**
19                                               6)  **FAILURE TO PROVIDE**
         vs.                                         **ACCURATE, ITEMIZED**
20                                                   **WAGE STATEMENTS;**
     GRUMA CORPORATION dba                       7)  **WAITING TIME PENALTIES;**
21   MISSION FOODS AND                           8)  **ILLEGAL DEDUCTIONS;**
     GUERRERO MEXICAN FOOD                       9)  **FAILURE TO REIMBURSE**
22   PRODUCTS, a Nevada                              **EXPENSES;**
     corporation; and DOES 1 through           10)  **UNFAIR BUSINESS**
23   50, inclusive,                                 **PRACTICES;**
                                                11)  **VIOLATION OF THE**
24              Defendants.                          **CARTWRIGHT ACT; AND**
                                                12)  **PRIVATE ATTORNEYS**
25                                                   **GENERAL ACT PENALTIES.**

26                                              **DEMAND FOR JURY TRIAL**

27

28

                                    1

1    Plaintiffs DEXTER'S LLC, FRANCO FOOD DISTRIBUTION dba
2    BOMBINS, GASTELUM FOOD, LLC, SOPHAMANY MOCH, GERARDO
3    FUENTES SR., GERARDO FUENTES JR., JORGE FRANCO, and MAYTE
4    GASTELUM ("Plaintiffs"), on behalf of themselves and all those similarly situated,
5    in their capacity as Aggrieved Employees (defined herein below) under the Private
6    Attorneys General Act of 2004, Lab. Code § 2699 *et seq.* ("PAGA"), allege as
7    follows:

8    ### SUMMARY OF CLAIMS

9    1.    Plaintiffs SOPHAMANY MOCH, GERARDO FUENTES SR.,
10   GERARDO FUENTES JR., JORGE FRANCO, and MAYTE GASTELUM are
11   individuals who work or worked as food delivery personnel for, and under the control
12   of and direction of, Defendant GRUMA CORORATION dba MISSION FOODS
13   AND GUERRERO MEXICAN FOOD PRODUCTS (hereinafter "Gruma" or
14   "Defendant"). With respect to their class claims, Plaintiffs bring this action on behalf
15   of themselves and all others similarly situated. Plaintiffs also pursue PAGA claims
16   on behalf of themselves and other Aggrieved Employees of Gruma. For both the class
17   action component and the PAGA component, the injured parties, including Plaintiffs,
18   are those who have worked as food delivery personnel for Gruma ("Gruma Delivery
19   Personnel").

20   2.    Plaintiffs allege that Gruma has violated and continues to violate various
21   California Labor Code protections applicable to Gruma Delivery Personnel, as
22   Gruma Delivery Personnel should be, and at all relevant times should have been,
23   classified as employees rather than independent contractors. As detailed herein
24   below, these violations include the failure to: (i) pay overtime wages; (ii) provide
25   meal and rest breaks and/or pay premiums for meal and rest periods not provided;
26   (iii) pay minimum wage; (iv) provide itemized wage statements; (vi) reimburse
27   business expenses; and (vii) keep accurate payroll records.
28   / / /

3.      Plaintiffs bring the First through Eleventh Causes of Action on behalf of all Gruma Delivery Personnel who worked in California from March 4, 2020 through the date of the final disposition of this action (the "Class").

4.      Plaintiffs bring their PAGA claim on behalf of all Gruma Delivery Personnel who worked in California from January 5, 2021 through the date of the final disposition of this action ("Aggrieved Employees").

## JURISDICTION AND VENUE

5.      The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.  Plaintiffs and the Class are all California citizens, and Gruma is a citizen of Nevada (where Gruma is incorporated) and Texas (where Gruma has its principal place of business).

6.      In addition, this Court has subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), as the matter in controversy exceeds $5,000,000, exclusive of interest and costs, the Class has more than 100 members, and minimal diversity exists.

7.      The Court has personal jurisdiction over Gruma because Gruma conducts substantial business activity in California and engaged in the unlawful acts described herein in California.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), in that the events or omissions giving rise to the claims alleged herein occurred in San Diego County within Southern District of California.

9.      Plaintiffs have exhausted their administrative remedies pursuant to California Labor Code § 2699.3.  Plaintiffs gave written notice to the Labor and Workforce Development Agency ("LWDA") and to Gruma (via certified mail) of the specific provisions of California law, including the California Labor Code, alleged to have been violated, including the facts and theories to support the alleged violations.  Plaintiffs also paid the required filing fee to the LWDA.  More than sixty-

3

five (65) days have elapsed since Plaintiffs provided said notice, and the LWDA has not indicated that it intends to investigate the alleged violations discussed in the notice. Accordingly, Plaintiffs may commence a civil action to recover penalties for themselves and other current and former employees under Labor Code § 2699, pursuant to Labor Code § 2699.3.

## THE PARTIES

10. Plaintiffs are informed and believe, and based thereon allege, that at all times relevant to this action, Defendant Gruma is and/or was a Nevada corporation qualified to do business and actually doing business in the State of California.

11. Plaintiff SOPHAMANY MOCH is, and at all times relevant to this action was, a resident of San Diego, California. Moch worked as delivery personnel for Gruma from approximately September 27, 2012 to March 3, 2021.

12. Plaintiff GERARDO FUENTES SR. is, and at all times relevant to this action was, a resident of San Diego, California. Fuentes Sr. worked as delivery personnel for Gruma from approximately March 10, 1997 to September 2, 2021.

13. Plaintiff GERARDO FUENTES JR. is, and at all times relevant to this action was, a resident of San Diego, California. Fuentes Jr. worked as delivery personnel for Gruma from approximately 2010 to September 2, 2021.

14. Plaintiff MAYTE GASTELUM is, and at all times relevant to this action was, a resident of San Diego, California. Gastelum worked as delivery personnel for Gruma from approximately February 7, 2018 to March 25, 2021.

15. Plaintiff JORGE FRANCO is, and at all times relevant to this action was, a resident of San Diego, California. Franco worked as delivery personnel for Gruma from approximately September 1997 to January 6, 2021. Plaintiff DEXTER'S LLC is, and at all times relevant to this action was, a California limited liability company qualified to do business and actually doing business in the State of California.

/ / /

16.     Plaintiff FRANCO FOOD DISTRIBUTION dba BOMBINS is, and at all times relevant to this action was, a California corporation qualified to do business and actually doing business in the State of California.

17.     Plaintiff GASTELUM FOOD, LLC is, and at all times relevant to this action was, a California limited liability company qualified to do business and actually doing business in the State of California.

18.     Plaintiffs are ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as DOES 1 through 50, inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs will amend the complaint to allege Doe defendants' true names and capacities when ascertained. Plaintiffs are informed and believe, and based thereon allege, that each of the Doe defendants was intentionally, negligently, or in some other manner responsible for the occurrences alleged herein, and that Plaintiffs' injuries and damages as alleged herein were proximately caused by such acts.

19.     Plaintiffs are informed and believe, and based thereon allege, that at all times herein mentioned, each Defendant was the agent, principal and/or employee of each other Defendant in the acts and conduct alleged herein and therefore incurred liability to Plaintiffs for the acts alleged below.  Plaintiffs are further informed and believe, and based thereon allege, that at all times herein mentioned, all Defendants acted within the course and scope of their employment and/or said agency.

## **FACTUAL BACKGROUND**

**A. <u>Gruma Delivery Personnel are Misclassified as Independent Contractors.</u>**

20.     Gruma willfully misclassifies Gruma Delivery Personnel as independent contractors, and falsely informs them that they are not employees and that they are properly classified as independent contractors, in violation of California Labor Code section 226.8.

/ / /

21.    Gruma Delivery Personnel are not engaged in an occupation or business distinct from that of Gruma, and in fact perform work that is part of the regular business of Gruma.

22.    Gruma supplies Gruma Delivery Personnel with instrumentalities and tools for the performance of their duties, performance of which did not require any special skill or education. And Gruma controls and directs the work performed by Gruma Delivery Personnel, which is part of Gruma's usual operations.

23.    By misclassifying Gruma Delivery Personnel as independent contractors, Gruma lowered their cost of doing business, including but not limited to payroll taxes, workers' compensation insurance, state disability insurance, and employee benefits, and deprived Gruma Delivery Personnel of their rights and protections as employees under California law.

### i.  Gruma Delivery Personnel are Integrated into Gruma's Operations and Essential to Gruma's Core Business.

24.    Gruma is a large, multi-national company, with far-reaching operations, that holds itself out as one of the world's largest producers and distributors of corn flour, tortillas, and tortilla-products ("Gruma Products"). Gruma has substantial operations in California and operates a large tortilla plant in Los Angeles, California. According to Gruma's website, Gruma's products are sold in supermarkets, food stores, warehouse stores, and convenience stores (collectively, "Stores") throughout California and the United States.

25.    Gruma could not conduct its business without the efforts of Gruma Delivery Personnel. To bring Gruma Products to market, where consumers can purchase the Gruma Products, Gruma relies on Gruma Delivery Personnel to transport Gruma Products from Gruma's facilities to Stores. The Gruma Delivery Personnel are then primarily responsible for: stocking Stores' shelves with Gruma Products, marketing, promoting and displaying the Gruma Products in an attractive manner and ensuring that the Gruma Products are fresh (not expired) and plentiful

6

for the products' consumers. The availability and reputation of Gruma's Products, and, in turn, Gruma's ability to earn money and conduct its business are entirely dependent on the role of Gruma Delivery Personnel. As such, as detailed below, it comes as no surprise that Gruma retains and exercises a high degree of control over – and actively supervises the work of – Gruma Delivery Personnel, both inside and outside of the Stores.

### ii. Gruma Delivery Personnel Lack Independence, Discretion or Autonomy.

26.     Gruma Delivery Personnel are required to form and register businesses, such as DEXTER'S LLC, FRANCO FOOD DISTRIBUTION dba BOMBINS, and GASTELUM FOOD, LLC,  and to sign a "Store Door Distributor Agreement" ("SDDA") with Gruma, whereby Gruma Delivery Personnel agree to deliver Gruma Products to Stores within certain areas, and thereafter promote the Gruma Products delivered, all pursuant to Gruma's highly-detailed and specific guidelines. The SDDAs are standardized contracts of adhesion, prepared by Gruma, and Gruma Delivery Personnel are not able to negotiate their terms. The SDDA includes a variety of provisions that establish Gruma's right to exercise control over the work of the Gruma Delivery Personnel.

27.     Gruma Delivery Personnel obtain a specific area, known as a "Sales Area" or "Route." Gruma Delivery Personnel are not permitted to distribute Gruma Products outside the designated Sales Area set forth in the SDDA.

28.     Pursuant to the SDDA, Gruma Delivery Personnel are required to purchase Gruma Products from Gruma at Gruma's preset prices. The Gruma Delivery Personnel are then required to pick up the Gruma Products at Gruma's facilities (at times and places specifically set by Gruma) and deliver or "resell" the Gruma Products to specific Stores located within their Route to be sold at prices dictated by Gruma.

/ / /

29.     On information and belief, Gruma enters into agreements with Stores, sometimes known as supplier agreements, slotting fee agreements, authorization agreements, and/or customer marketing agreements ("Store Agreements") whereby Gruma commits to sell, deliver, market, and merchandise the Gruma Products and the Stores agree to provide shelf space for Gruma Products. These relationships are based on the work done by Gruma Delivery Personnel. Gruma negotiates the terms in the Store Agreements without the involvement of the Gruma Delivery Personnel, including the price at which the Stores will purchase Gruma Products from the Gruma Delivery Personnel.

30.     The prices fixed by Gruma and the Stores are maintained in a scan-based trading ("SBT") system, which Gruma Delivery Personnel must use. The SBT system does not allow Gruma Delivery Personnel to change the prices at which the Stores will purchase the Gruma Products, and Gruma Delivery Personnel cannot sell products to Stores without using SBT.

31.     Gruma introduces products, sets prices, obtains authorizations, obtains shelf space, arranges for displays, determines the type and frequency of promotions, deals and in-store demonstrations, and deals with grocer and retail customer complaints. Gruma Delivery Personnel play no role in any of those decisions.

32.     Gruma Delivery Personnel are not engaged in independent businesses. Gruma Delivery Personnel cannot distribute Gruma Products without entering into an SDDA, and they can only sell those Gruma Products within their Route, to Stores that Gruma has contracted with, and at prices that Gruma dictates. In short, Gruma prohibits its Delivery Personnel from setting or in any way affecting the rates of pay for their services. Moreover, Gruma Delivery Personnel may not distribute "competitor" products without Gruma's consent, which is within Gruma's sole discretion to grant or deny.

33.     By working for Gruma, Gruma Delivery Personnel have not independently made the decision to go into business for themselves. Gruma forces

8

its Delivery Personnel into an artifice termed an independent contractor relationship, while precluding Gruma Delivery Personnel from taking any steps towards promoting and establishing an independent business, forming their own business relationships with Stores or otherwise promoting their services to the public or other customers or sources of business. To the contrary, and as a practical reality, Gruma insists on an exclusive, captive relationship with Gruma Delivery Personnel, through which Gruma delivers and sells Gruma Products.

34.    Gruma Delivery Personnel must use their own vehicle and pay for their own insurance, but are required to make their vehicles available for inspection by Gruma in its sole discretion, to ensure that said vehicles comply with Gruma's standards.

35.    Gruma can also choose to provide its Delivery Personnel with hand-held computerized accounting systems. If it does so, Gruma can then require its Delivery Personnel to use that system and impose an installation charge and weekly or monthly rental charges.

36.    Gruma Delivery Personnel are dependent on Gruma to identify what products they may distribute to stores and to which stores they can distribute those products.

37.    Gruma Delivery Personnel do not possess any particular skills other than those required to obtain a driver's license.

### iii. Gruma Controls and Directs the Work Performed by Gruma Delivery Personnel for Gruma.

38.    Pursuant to the SDDAs, Gruma maintains uniform policies and terms of service with which all Gruma Delivery Personnel must comply.

39.    Gruma Delivery Personnel work for Gruma for an indefinite period of time. However, Gruma may terminate its Delivery Personnel with cause for myriad reasons, or without cause.

40.     Gruma Delivery Personnel are not free from control and direction in connection with the performance of their work, both under the SDDA and in fact:

a.  Gruma sets the respective rates of pay for the work performed and determines the method of compensation.

b.  Gruma Delivery Personnel are required to arrive at Gruma's warehouse at designated times to pick up Gruma Products.

c.  Gruma regulates the clothing Gruma Delivery Personnel may wear while working for Gruma to ensure that they are preserving the goodwill of Gruma's business.

d.  Gruma Delivery Personnel are required to deliver Gruma Products to Stores at times specified by Gruma.

e.  Gruma Delivery Personnel are directed to arrange and stock Gruma Products per Gruma's preferences and specifications.

f.  Gruma sets forth standards by which Gruma Delivery Personnel are to communicate with Stores.

g.  Gruma Delivery Personnel are required to promote Gruma Products per Gruma's mandates and specifications.

h.  Gruma dictates the amount and type of insurance Gruma Delivery Personnel must obtain.

i.  Gruma Delivery Personnel were subjected to disciplinary "write-ups" by Gruma, akin to performance reviews of employees by an employer, if Gruma Deliver Personnel failed to comply with Gruma's rules, procedures and specifications.

**B. <u>Gruma Violates Its Employees' Rights Under California Law</u>**

41.     <u>Expense Reimbursement</u>.  Under Section 2802 of the California Labor Code, Gruma is and was responsible to reimburse its employees' business expenses.

42.     Gruma Delivery Personnel's expenses include, but are not limited to, personal cell phone usage during and outside of work hours when communicating

10

with Gruma and Stores; route purchases by Gruma Delivery Personnel; mileage costs, insurance costs, vehicle maintenance costs; warehouse dock usage fees when loading Gruma Products; hand-held computerized accounting systems usage for printing invoices to submit to Gruma; and purchase of excess and/or spoiled Gruma Products that are not sold by Stores, also referred to as "Credits."

43.    For example, throughout Plaintiff Moch's employment with Gruma, Gruma failed to reimburse him with the following businesses expenses, including but not limited to:

a.    Approximately $80,000 for the purchase of Gruma's route (which Moch was forced to purchase for the right to work for Gruma);

b.    Approximately $220 per month for insurance;

c.    Approximately $150 to $300 per week in "Credits," or charges forced on Plaintiff Moch by Gruma for unsold Gruma Products;

d.    An average of 110 miles of work-related travel per day;

e.    Approximately $50 per month for personal cell phone use;

f.    Approximately $30 per week for use of Gruma's warehouse; and

g.    Approximately $20 per week for the use of Gruma's hand-held computerized accounting systems.

44.    Moreover, Gruma is aware of the fact that Gruma Delivery Personnel are often required to retain additional workers to ensure that Gruma Products are delivered to the Stores in a timely manner, per Gruma's specifications. Gruma suffers and permits such workers to perform this work essential to Gruma's operations; however, Gruma fails to classify or treat these workers as Gruma's employees. Rather, Gruma improperly holds Gruma Delivery Personnel responsible to compensate these workers, under the guise that they are part of Gruma Delivery Personnel's independent operations, as opposed to being part of Gruma's business.  As a result, Gruma Delivery Personnel are forced to incur substantial expenses to ensure that Gruma's products are delivered as required.

45.    Gruma has not and does not reimburse Gruma Delivery Personnel for their work-related expenses. On information and belief, Gruma also does not provide Workers' Compensation insurance for Gruma Delivery Personnel.

46.    Overtime and Minimum Wage. Gruma Delivery Personnel, who never had identical daily routines because of Gruma's uniform statewide policy for controlling misclassified workers with respect to the delivery of Gruma Products, routinely worked over eight (8) hours per day and over forty (40) hours in a week. Under Section 510 of the California Labor Code, Gruma must pay employees, *inter alia*, overtime pay. However, Gruma does not pay Gruma Delivery Personnel overtime for all hours worked over eight in a day or over 40 hours in a week. Furthermore, although Gruma suffers or permits Gruma Delivery Personnel to work, Gruma fails to pay minimum wage for all hours worked and instead limits their pay to the net proceeds Gruma Delivery Personnel make after purchasing the Gruma Products at set prices and then reselling those Products at set prices. Even limiting the calculation of minimum wage to the hours a Gruma Delivery Personnel is engaged in distributing Gruma Products, Gruma fails to pay Gruma Delivery Personnel minimum wage for all hours worked in violation of California Labor Code Section 1197.

47.    Wage Statements and Time Records. Under Section 226 of the California Labor Code, employers must provide employees with itemized wage statements each pay period. Gruma's wage statements do not clearly itemize earnings or state the rate of pay in such a way that Gruma Delivery Personnel can readily identify whether they received all pay for which they are entitled under the law, such as hours worked, overtime, and minimum wages. Payroll records similarly fail to track all pay accurately.

48.    Meal and Rest Breaks. For Gruma Delivery Personnel who work five or more hours in a day, Gruma does not provide a 30-minute meal break during which Gruma Delivery Personnel are relieved from all work duties. Likewise, Gruma does

not provide Gruma Delivery Personnel a 10-minute rest break, similarly relieved of all work duties, for each shift of at least 3.5 hours. In addition, pursuant to Gruma's policy of classifying Gruma Delivery Personnel as independent contractors, Gruma lacks a meal or rest break policy under which Gruma Delivery Personnel are informed of the right to take appropriate meal and rest breaks. Rather, as a result of Gruma's uniform statewide policy for controlling misclassified workers with respect to the delivery of Gruma Products, Gruma Delivery Personnel were required to miss meal and rest breaks in order to comply with Gruma's policies and schedules with respect to the delivery of Gruma Products. Moreover, for any non-compliant meal and/or rest breaks, Gruma does not provide a premium payment to the Gruma Delivery Personnel.

49.    <u>Payment Upon Termination and Waiting Time Penalties</u>. For Gruma Delivery Personnel who have their employment terminated, Gruma does not pay those Delivery Personnel all wages due at the end of their employment and does not pay statutory penalties pursuant to the California Labor Code, including waiting time penalties. Likewise, Gruma fails to reimburse Gruma Delivery Personnel for all outstanding and unreimbursed business expenses at termination.

50.    <u>Willfulness</u>. Gruma has been sued for these and related unlawful acts before and is on notice of the unlawfulness of its operations. Yet, in direct and intentional violation of California law, Gruma persists with the artifice of the independent contractor relationship, thereby depriving Plaintiffs of the protections and benefits of California law. Gruma has continued to classify Plaintiffs and Gruma Delivery Personnel as independent contractors notwithstanding that its classification policy has violated both the California Supreme Court's decision in *Dynamex Operations W., Inc. v. Superior Court* (2018) 4 Cal.5th 903 and California Assembly Bill (AB) 5 for years. (California Legislative Information. "Assembly Bill No. 2257." Accessed Feb. 22, 2022.) Gruma's continued refusal to classify Gruma Delivery Personnel as employees constitutes willful misclassification.

## CLASS ALLEGATIONS

51.    Plaintiffs bring this action on behalf of themselves and all others similarly situated as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action has been brought and may properly be maintained as a class action as it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of Rule 23(b)(3).

52.    As to all claims requiring class certification, other than the claim for waiting time penalties under Labor Code § 203, Plaintiffs bring this action on behalf of themselves and as a class action on behalf of the following proposed class, the members of which have all been damaged by Gruma's herein-described conduct, and who are referred to herein as "Class Members":

> All persons who work or worked for Gruma in California pursuant to a Store Door Distributor Agreement ("SDDA") within the time period of July 1, 2020 through the date of final disposition of this action (the "Class").

53.    With respect to the claim for Labor Code § 203 waiting time penalties, Plaintiffs bring this action only on behalf of the following proposed subclass, the members of which have all been damaged by Gruma's herein-described conduct, and who referred to herein as "Subclass Members":

> All persons who worked for Gruma in California pursuant to a SDDA and whose SDDA was terminated at any time, within the time period of July 1, 2020 through the date of final disposition of this action (the "Subclass").

54.    Plaintiffs reserve the right to amend or modify the class and subclass definitions with greater specificity or divide the Class into further subclasses.

55.    **Numerosity:** The members of the Class and Subclass are so numerous that joinder of all members would be impractical, if not impossible.  The identities of the members of the Class and Subclass are readily ascertainable by review of records maintained by Gruma.

/ / /

14

56.  **Ascertainability.** The identity of Class and Subclass Members are ascertainable through Gruma's records or by public notice.

57.  **Community of Interest**:

a.  **Typicality**. Plaintiffs' claims are typical of the claims of the Class Members and Subclass Members. Plaintiffs, all Class Members, and all Subclass Members sustained injuries and damages arising out of and caused by Gruma's common course of conduct in violation of the law as alleged herein.

b.  **Adequacy**. Plaintiffs will fairly and adequately represent and protect the interests of the Class Members and Subclass Members. Plaintiffs' counsel is experienced in employment class actions and will fairly and adequately represent and protect the interests of the Class Members and Subclass Members.

c.  **Predominance**. Common questions of law and fact exist as to members of the Class and Subclass that predominate over any individualized questions, including the following:

      i.  Whether the Class Members and Subclass Members are employees or independent contractors;

      ii.  Whether Class Members were entitled to overtime compensation for overtime hours worked;

      iii.  Whether Gruma violated Labor Code § 510 by having a consistent and uniform policy and/or practice of failing to pay overtime compensation to Class Members when they worked overtime hours;

      iv.  Whether Class Members were entitled to mandatory meal and rest period breaks, and, if so, whether they were made available or provided;

      v.  Whether Gruma violated Labor Code § 226.7, and the applicable IWC Wage Orders, by implementing a consistent and uniform policy and/or practice of not paying to the Class Members

15

premium wages for missed, shortened, interrupted, or delayed meal and/or rest breaks;

vi.   Whether Gruma furnished accurate itemized wage statements to the Class Members;

vii.  Whether Subclass Members were paid all compensation due at the time of, or within seventy-two (72) hours of, the termination of their employment with Gruma;

viii. Whether Gruma's policies and/or practices, as described herein, constituted unfair business practices;

ix.   Whether Plaintiffs and other Class Members are entitled to damages, restitution, wages, statutory penalties, premium wages, declaratory relief, attorneys' fees, interest, and costs, and other relief pursuant to California Labor Code and applicable Wage Orders, and California Business & Professions §§ 17200 *et seq.*; and

x.    The nature and extent of class-wide injuries and the measure of damages, restitution, and disgorgement for the injuries.

58.   **Superiority**. Class treatment would benefit the courts and Class Members. Certification of the class would provide substantial benefits to the courts and Class Members. The damages suffered by individual Class Members are relatively small compared to the significant expense and burden of individual prosecution of this litigation. In addition, class certification will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Gruma's practices.

59.   Therefore, certification of the Class is appropriate pursuant to Fed. R. Civ. P. 23 (b)(3) because:

a.    Questions of law or fact common to the respective Class Members predominate over questions of law or fact affecting only individual members. This

16

predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims including consistency of adjudications. Absent a class action it would be highly unlikely that the Class Members would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed the expected recovery;

b.    A class action is a superior method for the adjudication of the controversy in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense, and the burden of the courts that individual actions would create; and

c.    The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of the class action.

60.    In the alternative, the Class should also be certified pursuant to Fed. R. Civ. P. 23(b)(2) because:

a.    The prosecution of separate actions by the individual members of the proposed class would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendant;

b.    The prosecution of individual actions could result in adjudications, which as a practical matter, would be dispositive of the interests of non-party class members or which would substantially impair their ability to protect their interests; and

c.    Defendant has acted or refused to act on grounds generally applicable to the proposed Class, thereby making appropriate final and injunctive relief with respect to the members of the proposed Class as a whole.

/ / /

# FIRST CAUSE OF ACTION
## Failure to Pay All Wages Due
### (Against all Defendants)

61.    Plaintiffs incorporate by reference and reallege all of the preceding paragraphs of this complaint as though fully set forth herein.

62.    Under California law, Defendants have an affirmative obligation to pay Plaintiffs and Class Members for all time they worked for Defendants. Defendants did not pay or compensate Plaintiffs and Class Members for all time that they were suffered or permitted to work. For example, Plaintiffs and Class Members were not compensated or paid for arriving early to, and waiting at, the Gruma warehouse to load Gruma Products to their vehicles, as scheduled by Defendants; actively loading Gruma Products from the Gruma warehouses into their vehicles; transporting Gruma Products to Stores; servicing Stores by the stocking and/or packing of Gruma Product onto Store shelves; communicating with Defendants about servicing Stores and promoting Gruma Products; communicating with Stores about delivering and promoting Gruma Products; returning Gruma materials, including Gruma pallets to the warehouse; and down time between servicing Stores when completing one service and waiting to service another Store. Additionally, Plaintiffs and Class Members were not paid for meal and rest periods, when such rest periods were able to be taken. Plaintiffs and Class Members were and are entitled to payment for these non-compensated hours at their average hourly rate for the workweek, to be calculated by dividing the total compensation made for the workweek by the total hours worked during the workweek, exclusive of rest and recovery periods. By failing to pay or compensate Plaintiffs and Class Members for this time worked, Defendants have proximately caused Plaintiffs and Class Members damages in the form of unpaid wages.

63.    Plaintiffs and Class Members were Defendants' employees and thus were and are entitled to payment of all unpaid wages, plus interest thereon, attorneys' fees, and costs.

## SECOND CAUSE OF ACTION
### Failure to Pay Minimum Wages
#### (Against all Defendants)

64.    Plaintiffs incorporate by reference and reallege all of the preceding paragraphs of this complaint as though fully set forth herein.

65.    Pursuant to California Labor Code § 1197, payment of less than the minimum wage fixed by law is unlawful. An employer violates the minimum wage statue even if the average rate for paid and unpaid hours exceeded the minimum wage.

66.    At all relevant times, Defendants failed and refused to pay Plaintiffs and Class Members at least the minimum wage in the State of California, as set forth in California Labor Code § 1197 and the applicable Wage Orders. Under California law, Plaintiffs and Class Members are entitled to at least the minimum wage for every hour worked.

67.    Defendants' failure to pay the legal minimum wage to Plaintiffs and Class Members as alleged herein was and is unlawful and creates entitlement, pursuant to California Labor Code § 1197, to recovery by Plaintiffs and Class Members in a civil action for the unpaid balance of the full amount of the unpaid wages owed including interest thereon, plus reasonable attorneys' fees and costs incurred in this action.

68.    In addition, pursuant to California Labor Code § 1197, Plaintiffs and Class Members are entitled to liquidated damages in an amount equal to the minimum wages unpaid and interest thereon.

## THIRD CAUSE OF ACTION
### Failure to Pay Overtime Wages
#### (Against all Defendants)

69.    Plaintiffs incorporate by reference and reallege all of the preceding paragraphs of this complaint as though fully set forth herein.

/ / /

/ / /

19

70.    At all relevant times, Defendants have been employers, and Plaintiffs and Class Members were or are employees under California law and are entitled to the protections of the California Labor Code.

71.    Under California law, any work in excess of eight (8) hours in a workday or forty (40) hours in a workweek is considered overtime and entitles the worker to overtime compensation.    Further, employees are entitled by law to additional overtime compensation for any work in excess of twelve (12) hours in a workday.

72.    Class Members, including Plaintiffs, have regularly worked in excess of eight (8) hours in a workday, twelve (12) hours in a workday, and forty (40) hours in a workweek during the Class Period.

73.    Throughout the Class Period, Defendants have misclassified Plaintiffs and Class Members and have failed and refused to pay them overtime compensation for their overtime hours worked as and, in the manner, required by California law.

74.    As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiffs and Class Members have sustained damages, including loss of earnings for hours of overtime worked on behalf of Defendants, in an amount to be established at trial, and are entitled to recover theses damages, as well as interest thereon, costs, and reasonable attorneys' fees pursuant to statute.

**FOURTH CAUSE OF ACTION**
**Failure to Provide Meal Periods**
**(Against All Defendants)**

75.    Plaintiffs incorporate by reference and reallege all of the preceding paragraphs of this complaint as though fully set forth herein.

76.    Class Members, including Plaintiffs, regularly worked in excess of five (5) hours in a workday without being authorized or permitted to take a meal period of at least thirty (30) minutes during which they were relieved of all duty, as required by California Labor Code §§ 226.7 and 512 and IWC Wage Order 4-2001, § 11. When an employer fails to provide such a meal period, the employer must pay the employee one (1) additional hour of pay, at the employee's regular rate of

20

compensation, for each workday that the meal period is not provided. Defendants have maintained a policy and/or practice whereby they failed and refused to pay this additional meal period compensation to Plaintiffs and Class Members.

77. Class Members, including Plaintiffs, also regularly worked in excess of ten (10) hours in a workday without being authorized or permitted to take a second meal period of at least thirty (30) minutes during which they were relieved of all duty, as required by California Labor Code §§ 226.7 and 512 and IWC Wage Order 4-2001, § 11. When an employer fails to provide such a meal period, the employer must pay the employee one (1) additional hour of pay, at the employee's regular rate of compensation, for each workday that the meal period is not provided. Defendants have maintained a policy and/or practice whereby they failed and refused to pay this additional meal period compensation to Plaintiffs and Class Members.

78. Class Members, including Plaintiffs, did not voluntarily or willfully waive entitlement to the meal periods required by California Labor Code §§ 226.7 and 512 and California Industrial Welfare Commission Wage Order 4-2001 § 11. Any express or implied waivers obtained from Class Members, including Plaintiffs, were not willfully obtained, were not voluntarily agreed to, or were a condition of employment, or made part of an unlawful contract of adhesion.

79. As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have sustained damages, including loss of earnings from unpaid meal periods, in an amount to be established at trial, and are entitled to recover these damages, as well as interest, costs, and reasonable attorney's fees, pursuant to statute.

### FIFTH CAUSE OF ACTION
**Failure to Provide Rest Periods**
**(Against All Defendants)**

80. Plaintiffs incorporate by reference and reallege all of the preceding paragraphs of this complaint as though fully set forth herein.

81. IWC Wage Order 4-2001, § 12 requires employers to authorize all employees to take a 10-minute paid rest period per every four (4) hours, or major

21

fraction thereof, worked.  If an employee is not provided a rest period, the employer must pay the employee one (1) additional hour of pay, at the employee's regular rate of compensation, for each workday that the rest period is not provided.

82.    Defendants have systematically failed and/or refused to authorize or permit Class Members, including Plaintiffs, to take a 10-minute rest break for every four (4) hours worked or major fraction thereof.  Plaintiffs and Class Members were required to continue with their duties and work through their entire shifts without rest periods.

83.    Defendants have also failed and/or refused to provide Class Members, including Plaintiffs, with the additional compensation for missed rest periods required by California Labor Code section 226.7 and IWC Wage Order 4-2001, § 12.

84.    Plaintiffs and, based upon information and belief, the Class who they seek to represent, did not lawfully voluntarily or willfully waive entitlement to rest periods.  Any express or implied waivers obtained from Plaintiffs and/or Class Members were not willfully obtained, were not voluntarily agreed to, or were a condition of employment, or made part of an unlawful contract of adhesion.

85.    Based on Defendants' conduct, as alleged herein, Defendants are liable to the Class Members, including Plaintiffs, for their unpaid premium wages for missed rest periods, pursuant to California Labor Code section 226.7 and Wage Order 4-2001, § 12.

<u>**SIXTH CAUSE OF ACTION**</u>
**Failure to Provide Itemized Wage Statements**
**(Against all Defendants)**

86.    Plaintiffs incorporate by reference and reallege all of the preceding paragraphs of this complaint as though fully set forth herein.

87.    California Labor Code § 226, subdivision (a) requires employers to furnish to employees, at the time of each payment of wages, an accurate itemized statement showing: (1) gross wages earned; (2) total hours worked by the employee; (3) the number of piece-rate units earned and any applicable piece rate if the

employee is paid on a piece-rate basis; (4) all deductions; (5) net wages earned, (6) the pay period; (7) the name of the employee and the last four digits of his or her social security number or an employee identification number; (8) the name and address of the employer; and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

88.    California Labor Code § 1174, subdivision (d) requires employers to keep adequate time records.

89.    Defendants knowingly and intentionally failed to furnish to Plaintiffs and, upon information and belief, Class Members, accurate itemized wage statements including the information required by Labor Code § 226.

90.    By failing to keep adequate records and furnish accurate itemized statements as required by California Labor Code §§ 226 and 1174, Defendants have injured Plaintiffs and Class Members.  This failure has injured Plaintiffs and Class Members by depriving them of wage and hour earnings information to which they are entitled, making it difficult to calculate the unpaid wages due, causing them to not be paid wages to which they are entitled and violating their rights under California Labor Code § 226 to review itemized wage statement information by inspecting the employer's underlying records.

91.    Plaintiffs and Class Members seek actual damages pursuant to California Labor Code § 226, subdivisions (c)and (g), in addition to interest and reasonable attorneys' fees and costs pursuant to Labor Code §§ 218.5, 218.6, and 1194(a).

## SEVENTH CAUSE OF ACTION
### Waiting Time Penalties
### (Against All Defendants)

92.    Plaintiffs incorporate by reference and reallege all of the preceding paragraphs of this complaint as though fully set forth herein.

/ / /

AMENDED COMPLAINT
CASE NO. 23cv0212-MMA-AHG

93.    California Labor Code §§ 201 and 202 require employers, such as Defendants, to pay their employees all wages due immediately upon discharge, or within seventy-two (72) hours of quitting without notice.

94.    Plaintiffs and Subclass Members have separated from employment with Defendants without being paid all earned and unpaid wages, including the overtime and meal and rest period wages that are due to them, within the time required by Labor Code §§ 201 and 202.

95.    At all times pertinent hereto, Defendants had it within their abilities to consult their business records and properly calculate and pay all of the said unpaid wages at the time of Plaintiffs' and each of the Subclass Members' separation from employment with Defendants.  However, Defendants, and each of them, willfully and intentionally failed and refused to pay the earned and unpaid wages to Plaintiffs and each of the Subclass Members.

96.    Plaintiffs and the members of the Subclass did not hide themselves, or in any manner refuse or obfuscate any attempt by Defendants to tender the balance of the earned and unpaid wages.

97.    Pursuant to California law, Plaintiffs and Subclass Members are entitled to a penalty equal to their regular daily rate of pay, up to a maximum of thirty (30) days.

98.    Plaintiffs seek penalties pursuant to California Labor Code § 203 in an amount to be determined at trial and attorneys' fees, costs, and interest pursuant to California Labor Code § 218.5.

### EIGHTH CAUSE OF ACTION
**Illegal Deductions**
**(Against All Defendants)**

99.    Plaintiffs incorporate by reference and reallege all of the preceding paragraphs of this complaint as though fully set forth herein.

/ / /

AMENDED COMPLAINT
CASE NO. 23cv0212-MMA-AHG

100.   An employer can lawfully withhold amounts from an employee's wages only (a) when required or empowered to do so by state or federal law, or (b) when a deduction is expressly authorized in writing by the employee to cover insurance premiums, benefit plan contributions, or other deductions not amounting to a rebate on the employee's wages, or (c) when a deduction to cover health, welfare, or pension contributions is expressly authorized by a wage or collective bargaining agreement. California Labor Code Sections 221 and 224.

101.   Gruma required Plaintiffs and Class Members to dispose of all "Stales" or "Unsaleables" in Plaintiffs' and Class Members' inventory when picked up by Plaintiffs and Class Members from Stores serviced by them. As stated in the SDDA, all losses, referred to as "credits" due to "Stales" or "Unsaleables" were borne by Plaintiffs and Class Members.

102.   Defendants regularly deducted sums from the wages of Plaintiffs and Class Members that were not authorized or permitted under California law.

103.   As a proximate result of Defendants' actions, Plaintiffs and Class Members have sustained damages in an amount to be proven at trial consisting of the amount of wages illegally deduction from their pay, plus interest thereon.

104.   Additionally, Plaintiffs and Class Members are entitled to all available statutory penalties, including those provided in California Labor Code § 203, as well as all other remedies available under the law.

**NINTH CAUSE OF ACTION**
**Failure to Indemnify Business Expenses**
**(Against all Defendants)**

105.   Plaintiffs incorporate by reference and reallege all of the preceding paragraphs of this complaint as though fully set forth herein.

106.   Defendants willfully misclassified Plaintiffs and Class Members as independent contractors.

/ / /

/ / /

107.   California Labor Code § 2802 obligates employers to indemnify employees for all necessary expenditures and losses incurred by the employees while discharging their duties on behalf of the employer.

108.   Defendants failed to indemnify and compensate Plaintiffs and Class Members for work-related expenses, including but not limited expenses related to: hand-held computerized accounting system for generating invoices and placing orders for Gruma products, route purchases, "credits"/ stales / unsaleables, vehicle repairs, gas, vehicle maintenance, insurance, fines, licenses, cell-phone use, compensation to other workers, etc. which were incurred while discharging their duties on behalf of Defendants, all in violation of Section 2802.

109.   As a proximate result of Defendants' violation of section 2802, Plaintiffs and Class Members have been damaged in the amount expended by them in the course of performing their duties, which amount shall be subject to proof.

110.   Plaintiffs and Class Members are entitled to recovery of such additional statutory penalties from Defendants, all in an amount to be determined and trial, including interest thereon together with reasonable attorneys'' fees and costs.

### TENTH CAUSE OF ACTION
**Unfair Business Practices**
**Violation of Bus. & Prof. Code, § 17200 et seq.**
**(Against all Defendants)**

111.   Plaintiffs incorporate by reference and reallege all of the preceding paragraphs of this complaint as though fully set forth herein.

112.   Defendants have engaged and continue to engage in unfair and unlawful business practices in California by practicing, employing, and utilizing the policies, customs, and practices outlined above, including, to wit: (1) failing to pay all wages earned, including overtime wages; (2) failing to pay all earned wages in a timely fashion; and (3) failing to pay premium wages for meal and rest periods not provided.

/ / /

26

113.   Defendants' utilization of such unfair and unlawful business practices constitutes unfair, unlawful competition and provides an unfair advantage over Defendants' competitors.

114.   Plaintiffs seek, on their behalf, on behalf of other members of the Class, and on behalf of the general public, full restitution of monies, as necessary and according to proof, to restore any and all monies withheld, acquired, and/or converted by Defendants by means of the unfair practices complained of herein.

115.   The acts complained of herein occurred within the last four (4) years preceding the filing of this action.

116.   Plaintiffs are informed and believe, and based thereon allege, that at all times pertinent hereto, Defendants have engaged in unlawful, deceptive, and unfair business practices, as proscribed by Business & Professions Code §§ 17200 *et seq.*, including those set forth hereinabove, thereby depriving Plaintiffs and other Class Members of the general public the minimum working standards and conditions due to them under California's laws and IWC wage orders as specifically described therein.

## ELEVENTH CAUSE OF ACTION
### Violation of the Cartwright Act
### (Against all Defendants)

117.   Plaintiffs incorporate by reference and reallege all of the preceding paragraphs of this complaint as though fully set forth herein.

118.   As alleged herein below, Gruma engaged in vertical price-fixing by entering into and engaging in an unlawful trust in restraint of trade and commerce by combining, conspiring, and agreeing with Stores to fix the price at which Plaintiffs and Class Members must sell Gruma Products to the Stores in violation of California Business and Professions Code section 16720 et seq. (hereafter "Section 16720").

119.   Defendant accomplishes this price fixing by including provisions in the SDDAs which require Class Members, including Plaintiffs, to comply with the terms of the agreements reached between Defendant and the Stores and by doing all of the

27

billing to and collecting from the Stores at the fixed prices.

120.   As a direct, foreseeable and proximate result of Defendant's violations of the Cartwright Act described above, Class Members, including Plaintiffs, are not permitted to either increase the resale price of purchased Gruma Products to the Stores to generate more profit on each unit of product they sell, decrease the price of Gruma Products charged to Stores in the attempt to sell more units of product, or give direct discounts to consumers in the attempt to sell more units of Gruma Product. Accordingly, Class Members, including Plaintiffs, have suffered damages due to Defendant's conduct in an amount to be proven at trial.

121.   Plaintiffs and the Class are entitled to injunctive relief to prevent and preclude Defendants' anticompetitive conduct. Under the Cartwright Act, Plaintiffs and the Class may "recover . . . preliminary or permanent injunctive relief when and under the same conditions and principles as injunctive relief is granted by courts generally under the laws of this state and the rules governing these proceedings . . . ." (Bus. & Prof. Code, § 16750.) In the absence of appropriate injunctive relief, Defendant's violations of the antitrust laws will continue unabated in the State of California and Plaintiffs and/or the Class will continue to suffer the harm complained of in this action. Defendant acted intentionally, oppressively and maliciously toward Plaintiffs and the Class with a conscious disregard of their rights, or the consequences to Plaintiffs and the Class, with the intent of depriving Plaintiffs and the Class of property and legal rights and otherwise causing the Plaintiffs and the Class injury. Gruma has been sued before on the basis of violating the Cartwright Act and is on notice of the unlawfulness of its operations. Yet, in direct and intentional violation of California law, Gruma persists with engaging in vertical price-fixing thereby depriving Plaintiffs and the Class of the protections and benefits of California law.

/ / /

/ / /

/ / /

## TWELFTH CAUSE OF ACTION
### Civil Penalties Under Private Attorneys General Act
### (Against all Defendants)

122.   Plaintiffs incorporate by reference and reallege all of the preceding paragraphs of this complaint as though fully set forth herein.

123.   Plaintiffs submit this Complaint to include allegations pursuant to California Labor Code §§ 2698 *et seq.*, the Private Attorneys General Act of 2004 ("PAGA").   As described above, Plaintiffs have complied with all relevant administrative requirements.

124.   Plaintiffs are aggrieved employees as defined in California Labor Code § 2699, subdivision (a).  Plaintiffs bring this case on behalf of themselves and other current and former aggrieved employees affected by the labor law violations alleged in this Complaint.

125.   Plaintiffs also seek civil penalties as provided under applicable California Labor Code sections for violations of the California Labor Code alleged herein pursuant to California Labor Code § 2699, subdivision (a).  To the extent that any violation alleged herein does not carry a penalty, Plaintiffs seek all civil penalties pursuant to California Labor Code § 2699, subdivision (f), for Plaintiffs and other current or former employees for violations of those sections.   Plaintiffs are also entitled to an award of attorneys' fees and costs as set forth in this Complaint.

126.   Plaintiffs also seek civil penalties pursuant to Labor Code § 558, for themselves and other current or former employees of Defendants, for Defendants' violations of the Labor Code sections and/or applicable IWC Wage Orders referenced herein related to the regulation of hours and days of work.  These penalties include (a) for any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages, and (b) for each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid

29

wages.  Further, per subdivision (c) of Labor Code § 558, all wages recovered pursuant this Labor Code section shall be paid to the affected employee.

127.   Plaintiffs' PAGA claim does not require class certification because the claims in this action are held by Plaintiffs and, primarily, on behalf of the State of California.  Seventy-five percent (75%) of the net penalties obtained through PAGA accrue to the State of California.  Both the language of PAGA and the express intent of the Legislature indicate that an aggrieved employee may bring an action on behalf of other employees without complying with the requirements of a class action. California Labor Code § 2699 specifically states that an aggrieved employee may bring an action on behalf of other employees, "[n]otwithstanding any other provision of law . . . ."

128.   An action under the PAGA is in the nature of an enforcement action with the aggrieved employee acting as a Private Attorney General to collect penalties from employers who violate labor laws.  Such an action is designed to protect the public and penalize defendants for past illegal conduct.  Restitution is not the primary object of a PAGA action.  An action under the PAGA is not for the purpose of recovering damages, but only for the recovery of a civil penalty.  Further, PAGA recoveries do not preclude an employee from pursuing any other claim he or she may have available under the law, including those for any unpaid wages.

129.   As such, Plaintiffs, in their individual capacities, hold a substantive right to bring PAGA claims by standing in the shoes of, and on behalf of, the State of California to enforce California labor laws.

## **PRAYER**

WHEREFORE, Plaintiffs, on behalf of themselves, the proposed class, the proposed subclass, and/or other similarly situated, pray for judgment against Defendants as follows:

1.      That the Court determine that the relevant claims in this complaint may be maintained as a class action under Fed. R. Civ. P. 23 and/or as a

30

representative action under Business and Professions Code § 17200 et seq. and Labor Code § 2699;

2. That the Court determine the SDDA is void and in violation of Section 226.8 of the California Labor Code.

3. That Defendants are found to have violated the overtime provisions of the Labor Code as to Plaintiffs and Class Members;

4. That Defendants are found to have violated the minimum wage provisions of the Labor Code as to Plaintiffs and Class Members;

5. That Defendants are found to have violated the meal period provisions of IWC Wage Order No. 4 and the Labor Code as to Plaintiffs and the Class Members;

6. That Defendants are found to have violated the rest period provisions of IWC Wage Order No. 4 and the Labor Code as to Plaintiffs and the Class Members;

7. That Defendants are found to have violated Labor Code §§ 201-203 for willful failure to pay all compensation owed at the time of termination of employment to Plaintiffs and Subclass Members;

8. That Defendants are found to have violated the itemized wage statement requirements of Labor Code § 226 as to Plaintiffs and the Class Members;

9. That Defendants are found to have violated Business and Professions Code § 17200 by failing to pay Plaintiffs and others similarly situated overtime and meal and rest period wages as required by Labor Code §§ 226.7 and 510 and IWC Wage Order No. 4;

10. An award to Plaintiffs and Class Members of damages for the amount of unpaid overtime compensation, including interest thereon, and, as to the Subclass Members, waiting-time penalties, subject to proof at trial;

11.     An award to Plaintiffs and Class Members of damages for the amount of unpaid wages, including interest thereon, and, as to the Subclass Members, waiting-time penalties, subject to proof at trial;

12.     An award to Plaintiffs and Class Members of damages for the amount of unpaid meal and rest period compensation, including interest thereon, and, as to the Subclass Members, waiting-time penalties, subject to proof at trial;

13.     An award to Plaintiffs and Class Members of damages or penalties for Defendants' failure to provide timely, accurate itemized wage statements in accordance with Labor Code § 226;

14.     That Defendants be ordered to reimburse the business expenses incurred by Plaintiffs and Class Members;

15.     That Defendants be ordered to pay restitution to Plaintiffs and others similarly situated due to Defendants' unlawful activities, pursuant to Business and Professions Code § 17200 et seq., for the four years preceding the filing of this complaint;

16.     That Plaintiffs be awarded punitive and treble damages due to Defendants' unlawful activities, in violation of the Cartwright Act;

17.     That Plaintiffs and Class Members and Subclass Members be awarded reasonable attorney's fees and costs pursuant to statute, including Labor Code §§ 218.5, 226, 1194, 2699, and Code of Civil Procedure § 1021.5;

18.     That Plaintiffs and Class Members and Subclass Members be awarded penalties under Labor Code § 2699 for Defendants' violations of Labor Code §§ 201, 202, 203, 226.7, 510, 512 and 1174;

19.     For interest pursuant to applicable provisions of law, including but not limited to Labor Code §§ 218.6 and 1194, Civil Code §§ 3287, 3288 and 3289, and Business and Professions Code § 17203;

20.     For penalties pursuant to California Labor Code §§ 2689 *et seq.*;

21.    For an award of damages and/or penalties pursuant to Labor Code § 558; and

22.    For such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

DUNN DESANTIS WALT & KENDRICK, LLP

Dated:  February 21, 2023    By:    */s/ David D. Cardone*
                                James A. McFaul
                                Bradley A. Lebow
                                David D. Cardone

Attorneys for Plaintiffs, Proposed Class Members, and Aggrieved Employees

33