1  James A. McFaul, Esq. (SBN 248670)
   David D. Cardone, Esq. (SBN 254954)
2  Bradley A. Lebow, Esq. (SBN 240608)
   DUNN DESANTIS WALT & KENDRICK, LLP
3  750 B Street, Suite 2620
   San Diego, CA 92101
4  Telephone: (619) 573-4488
   Facsimile:  (619) 255-4868
5  JMcFaul@ddwklaw.com / DCardone@ddwklaw.com
   BLebow@ddwklaw.com
6
   Attorneys for Plaintiffs, Proposed Class Members, and
7  Aggrieved Employees

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10
   DEXTER'S LLC, a limited liability        Case NO. 23-cv-0212-MMA (AHG)
11 company; FRANCO FOOD
   DISTRIBUTION dba BOMBINS, a              **PLAINTIFFS' MEMORANDUM
12 California corporation;                  OF POINTS AND AUTHORITIES
   GASTELUM FOOD, LLC, a                    IN SUPPORT OF UNOPPOSED
13 limited liability company;               MOTION FOR PRELIMINARY
   SOPHAMANY MOCH, an                       APPROVAL OF CLASS ACTION
14 individual; GERARDO FUENTES              SETTLEMENT**
   SR., an individual; GERARDO
15 FUENTES JR., an individual;              Date:  July 24, 2023
   JORGE FRANCO, an individual;             Time: 2:30 p.m.
16 MAYTE GASTELUM, an                       Courtroom: 3C
   individual; on behalf of themselves      Judge: Hon. Michael M. Anello
17 and all those similarly situated,

18         Plaintiffs,

19   vs.

20 GRUMA CORPORATION dba
   MISSION FOODS AND
21 GUERRERO MEXICAN FOOD
   PRODUCTS, a Nevada
22 corporation; and DOES 1 through
   50, inclusive,
23
24         Defendants.

25

26

27

28
                                    1

# TABLE OF CONTENTS

I.   BACKGROUND .................................................................................... 8

   A.   Overview of Plaintiffs' Claims ................................................ 8

   B.   The PAGA Notice ..................................................................... 9

   C.   Pre-Mediation Investigation ................................................... 9

   D.   Mediation ............................................................................... 10

   E.   Settlement Terms ................................................................... 11

        1.   Maximum Settlement Amount and Net Settlement Amount ................................................................. 11

        2.   Release ....................................................................... 11

        3.   Class Notice .............................................................. 12

II.  CONDITIONAL CERTIFICATION AND PRELIMINARY APPROVAL OF THE SETTLEMENT ARE WARRANTED ...................... 13

   A.   Legal Standard ...................................................................... 13

   B.   Certification of the Class for Purposes of Settlement is Appropriate ......................................................................... 13

        1.   The Rule 23(a) Requirements are Met ................................... 14

             a.   Numerosity ................................................... 14
             b.   Commonality ................................................. 14
             c.   Typicality ...................................................... 15
             d.   Adequacy of Representation ......................... 16

        2.   Rule 23(b)(3) is Met ................................................ 17

             a.   Common Issues Predominate ......................... 17
             b.   Class Settlement is Superior to Individual Actions ......... 18

   C.   The Class Action Settlement is Fair, Reasonable, and Adequate ......................................................................... 19

        1.   Adequate Representation ....................................... 20

        2.   The Settlement was Negotiated at Arm's Length .................... 20

        3.   The Relief Provided for the Class is Adequate ......................... 21

             a.   The costs, risks, and delay of trial and appeal ................. 21
             b.   The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims ......... 22

2

c.      The terms of any proposed award of attorney's fees, including timing of payment .................................................. 22

4.      The Settlement Treats Class Members Equitably Relative to Each Other. .............................................................. 24

III.    THE PROPOSED CLASS NOTICE IS THE BEST PRACTICABLE ...................................................................................... 24

IV.     CONCLUSION ............................................................................ 25

3

1

## TABLE OF AUTHORITIES

2

### Cases

3

4

*B.W.I. Custom Kitchen v. Owens-Illinois*
191 Cal.App.3d 1341, 1348 (1987) ................................................................. 18

5

*Briseno v. ConAgro Foods, Inc.*
998 F.3d 1014, 1023 (9th Cir. 2021) ............................................................... 23

6

7

*Churchill Village, LLC v. General Electric*
361 F.3d 566, 575 (9th Cir. 2004) ................................................................... 25

8

*Cifuentes v. CEVA Logistics U.S., Inc.*
16-cv-01957-H-DHB, 2017 WL 2537247, at *2 (S.D. Cal. June 12, 2017)..15

9

10

*Class Plaintiffs v. City of Seattle*
955 F.2d 1268, 1276 (9th Cir. 1992) ............................................................... 13

11

*Cody v. SoulCycle Inc.*
Case No. 15-cv-6457-MWF (JEMx), 2017 WL 11628587, at *5
(C.D. Cal. June 22, 2017) ................................................................................ 20

12

13

*Cordova v. BAE Systems Technology Solutions & Services, Inc.*,
Case No. 20-cv-2425 JLS (MDD), 2022 WL 298365, at *5
(S.D. Cal. Feb. 1, 2022) ................................................................................... 15

14

15

*Ellis v .Costco Wholesale Corp.*
657 F.3d 970, 985 (9th Cir. 2011) ................................................................... 16

16

*Hanlon v. Chrysler Corp.*
150 F.3d 1011, 1020 (9th Cir. 1998) ..................................................... 15, 16, 17

17

18

*Hanon v. Dataproducts Corp.*,
976 F.2d 497, 508 (9th Cir. 1992) ................................................................... 15

19

*Harris v. Vector Marketing Corp.*,
Case No. 08-cv-5198 EMC, 2011 WL 1627973, at *8
(N.D. Cal. Apr. 29, 2011) ................................................................................ 20

20

21

*Hilsey v. Ocean Spray Cranberries, Inc.*
Case No. 3:17-CV-2335-GPC-MDD, 2020 WL 520616, at *5
(S.D. Cal. Jan. 31, 2020) ................................................................................. 20

22

23

*In re BofI Holding, Inc. Securities Litigation*
Case No. 3:15-cv-02324-GPC-KSC, 2022 WL 2068424, at *10
(S.D. Cal. June 8, 2022) .................................................................................. 23

24

25

*In re Hyundai & Kia Fuel Econ. Litig.*
926 F.3d 539, 557 (9th Cir. 2019) ................................................................... 17

26

27

*In re Packaged Seafood Products Antitrust Litigation*
Case No. 3:15-md-02670-DMS-MDD, 2022 WL 4283551, at *4
(S.D. Cal. Jan. 26, 2022) ................................................................................. 14

28

4

*In re Syncor ERISA Litig.*
  516 F.3d 1095, 1101 (9th Cir. 2008) ............................................................... 19

*Johnson v. Serenity Transp., Inc.*
  No. 15-cv-02004-JSC, 2018 WL 3646540, at *11
  (N.D. Cal. Aug. 1, 2018) .................................................................................... 18

*Kimbo v. MXD Group, Inc.*
  Case No. 2:19-cv-00166-WBS (KJN), 2020 WL 4547324, at *3
  (E.D. Cal. Aug. 6, 2020)............................................................................... 15, 19

*Lim v. Transforce, Inc.,*
  No. 19-CV-04390-JAK (AGRx), 2022 WL 17253907, at *6
  (C.D. Cal. Nov. 15, 2022)...............................................................13, 14, 15, 18

*Perkins v. LinkedIn Corporation*
  Case No. 13-cv-04303-LHK, 2015 WL 13357952, at *2
  (N.D. Cal. Sep. 15, 2015) .................................................................................. 20

*Powers v. Eichen*
  229 F.3d 1249, 1256 (9th Cir. 2000) ................................................................ 23

*Sali v. Coronoa Reg'l Med. Ctr.*
  909 F.3d 996, 1007 (9th Cir. 2018) .................................................................. 16

*Sengvong v. Probuild Company LLC*
  3:19-cv-2231-MMA-JLB, 2021 WL 4504620, at *6
  (S.D. Cal. Oct. 1, 2021)..................................................................................... 23

*Slaven v. BP Am., Inc.*
  190 F.R.D. 649, 654 (C.D. Cal. 2000)............................................................... 14

*Spann v. J.C. Penney Corp.*
  314 F.R.D. 312, 318 (C.D. Cal. 2016)............................................................... 19

*Staton v. Boeing Co.*
  327 F.3d 938, 952 (9th Cir. 2003) .................................................................... 13

*Torres v. Mercer Canyons, Inc.*
  835 F.3d 1125, 1134 (9th Cir. 2016)................................................................. 17

*Victorino v. FCA US LLC*
  No. 16-cv-1617-GPC (JLB), 2023 WL 3296155, at *3 ................................. 20

**Rules**

Fed. R. Civ. P. 23(a) .............................................................................. 14, 15, 16

Fed. R. Civ. P. 23(b).................................................................................... 17, 18

Fed. R. Civ. P. 23(c)...........................................................................................25

Fed. R. Civ. P. 23(e) ........................................................................... 19, 20, 24

**<u>Other</u>**

*Manual for Complex Litigation* § 21.63 (4th ed. 2004) .......................................... 13

6

Plaintiffs Dexter's LLC, Franco Food Distribution dba Bombins, Gastelum Food, LLC, Sophamany Moch, Gerardo Fuentes Sr., Gerardo Fuentes Jr., Jorge Franco, and Mayte Gastelum ("Plaintiffs") respectfully submit this memorandum of points and authorities in support of their Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Motion").

Plaintiffs are or were distributors for defendant Gruma Corporation dba Mission Foods and Guerrero Mexican Food Products ("Defendant"), a manufacturer of tortillas and other food products. In their operative Amended Class Action Complaint (the "FAC," Doc. No. 3), Plaintiffs assert that Defendant misclassified them and other similarly situated persons as independent contractors, when they should have been classified as employees. (*Id*., ¶ 2.) Plaintiffs assert class claims against Defendant for, inter alia, Labor Code violations, unfair competition, and violation of the Cartwright Act. Plaintiffs also assert a claim against Defendant, on behalf of aggrieved employees, for civil penalties under California's Private Attorneys General Act ("PAGA").

On August 12, 2022, Plaintiffs and Defendant (collectively, the "Parties") participated in a mediation with highly-regarded mediator, Antonio Piazza, Esq. The Parties reached a settlement at the mediation, which was later finalized in the Stipulation of Class Action and PAGA Settlement and Release (the "Settlement Agreement" and the settlement therein referred to as the "Settlement"), which is attached as **Exhibit 1** to the Declaration of David D. Cardone, Esq. ("Cardone"), filed concurrently herewith.

With this Motion, Plaintiffs request, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that the Court preliminarily approve the Parties' Settlement and conditionally certify a class so that notice may be provided to the class members. Specifically, Plaintiffs request that the Court:

- Grant preliminary approval of the proposed Settlement;

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
CASE NO. 23-cv-212-MMA (AHG)

- Certify a class, for the purposes of settlement only, consisting of all persons or entities who/that are or were signatories to an agreement with Defendant for the sale and distribution of Defendant's Product[1] within California during the Class Period [July 1, 2020 through and including the Preliminary Approval Date], in addition to their owners, proprietors, partners and/or members (the "Class");

- Approve the form and manner of providing Class Notice (as set forth in the Settlement Agreement);

- Establish a schedule for providing the Class Notice to the members of the Class and for submitting requests for exclusion and any objections to the Settlement; and

- Set the Final Approval Hearing.

## I.

## BACKGROUND

### A.    Overview of Plaintiffs' Claims

Defendant is a large, multi-national corporation that produces corn and flour tortillas, and tortilla products. (FAC, ¶ 24.) Defendant operates a tortilla plant in Los Angeles, California, and its products are sold in stores throughout California (and the United States). (*Id.*)

Plaintiffs worked as distributors for Defendant. (FAC, ¶ 1.) Defendant requires its distributors, like Plaintiffs, to sign a "Store Door Distributor Agreement" ("SDDA"). (*Id.*, ¶ 26.) Defendant relied and continues to rely on Plaintiffs and other distributors to distribute Defendant's products from Defendant's facilities to third-party retail outlets, to stock the outlet's shelves with Defendant's products, and to

---

[1] All capitalized terms not otherwise defined herein have the definitions set forth in the Settlement Agreement.

ensure that the shelves remain adequately stocked with Defendant's products. (*Id*., ¶ 25.)

Plaintiffs assert that Defendant wrongfully classified them as independent contractors, when they should have been classified as employees. (*Id*., ¶ 2.) Plaintiffs assert the following twelve claims against Defendant: 1) failure to pay all wages due at time of discharge; 2) failure to pay minimum wages; 3) failure to pay overtime wages; 4) failure to provide meal periods; 5) failure to provide rest breaks; 6) failure to provide accurate, itemized wage statements; 7) waiting time penalties; 8) illegal deductions; 9) failure to reimburse expenses; 10) unfair business practices; 11) violation of the Cartwright Act; and 12) PAGA civil penalties. (FAC, ¶¶ 61 – 129.)

Plaintiffs bring their claims against Defendant on behalf of themselves and all others similarly situated, and they also seek civil penalties pursuant to PAGA on behalf of aggrieved employees. (FAC, ¶ 1.)

## B.   The PAGA Notice

On January 5, 2022, Plaintiffs filed a PAGA notice (the "PAGA Notice") with the Labor & Workforce Development Agency (the "LWDA"), asserting violations of California Labor Code arising out of Defendant's alleged misclassification of Plaintiffs as independent contractors, including alleged violations of California Labor Code sections 201, 202, 203, 204, 226, 226.2, 226.7, 226.8, 510, 512, 515, 558, 1174, 1182.12, 1194, 1197, 1198, 2802, and applicable IWC Wage Orders. (Cardone Decl., ¶ 3, Ex. 1.)

## C.   Pre-Mediation Investigation

After the PAGA Notice was filed with the LWDA, Class Counsel sent a detailed demand letter to Defendant's counsel, attaching a draft complaint. (Cardone Decl., ¶ 4.) The Parties entered into a tolling agreement, with the intent of pursuing pre-litigation mediation. (*Id*., ¶ 5.) Class Counsel requested, and Defendant provided, information to facilitate settlement discussions and mediation, including information

9

regarding the number of distributors, the number of delivery routes, and average revenue for routes. (*Id.*, ¶ 6.)

In preparation for mediation, Class Counsel retained a damages expert, Lindsay Petitte, of Torrey Partners, to prepare a damages analysis as to Defendant's exposure to wage-and-hour damages and PAGA penalties. (*Id.*, ¶ 7.)  In addition, Class Counsel retained an economist, Dr. Jon Riddle, of Vega Economics, to prepare a damages analysis as to Defendant's exposure for damages relating to the Cartwright Act claim. (*Id.*, ¶ 9.)

### D.    Mediation

On August 12, 2022, the Parties participated in a mediation before mediator Antonio Piazza, Esq.[2] Plaintiff Sophamany Moch attended the mediation with Class Counsel. (Cardone Decl., ¶¶ 10-11; Moch Decl., ¶ 6.) At the conclusion of the mediation, the Parties executed a binding and enforceable Memorandum of Agreement (the "MOA"), and they agreed that a detailed, long-form settlement agreement would be completed thereafter. (Cardone Decl., ¶ 10.)[3]

As part of the MOA, the Parties agreed that Plaintiffs would file a Complaint in the United States District Court for the Southern District of California containing all claims that the Parties contemplated settling. (*Id.*)

Plaintiffs filed their original complaint (Doc. No. 1) on February 3, 2023, and then filed their operative FAC on February 21, 2023. (Doc. No. 3.) On March 14, 2023, the Court granted the Parties' Joint Motion to Stay Case and directed the Parties to file a status report or motion for preliminary approval on or before May 30, 2023. (Doc. No. 6.)

---

[2] Mr. Piazza's biography is available here: https://www.mediatednegotiations.com/bio/

[3] Mr. Piazza also assisted with settlement agreements for Plaintiffs relating to their individual claims arising from alleged wrongful termination of Plaintiffs' SDDA's and loss of their routes. (Cardone Decl., ¶ 12.)

**E.      Settlement Terms**

The Parties and their counsel have finalized and signed the Settlement Agreement (Cardone Decl., ¶ 2, Ex. 1), certain key terms of which are summarized below.

        **1.      Maximum Settlement Amount and Net Settlement Amount**

The Settlement Agreement contemplates a Maximum Settlement Amount and Net Settlement Amount as follows:

- Maximum Settlement Amount: $930,000 (§ 1.18);
- Class Counsel Award: not to exceed $170,000 (§ 3.15);
- Class Counsel Costs: not to exceed $49,743.84 (§ 3.15);
- Enhancement Award: up to $1,000 each for the eight named Plaintiffs (§ 3.14);
- Settlement Administration Costs: estimated not to exceed $20,000 (§ 1.32);
- Translation Provider Costs: estimated not to exceed $2,000 (§ 1.36); and
- LWDA Payment: $15,000 (§ 1.22).

Assuming each of the above figures is awarded at the maximum requested amount, then the Net Settlement Amount available for distribution to Settlement Class Members will be: $665,256.16.

        **2.      Release**

The Settlement Agreement defines "Released Claims" to mean:

> any and all claims that were asserted in the Operative Complaint through the date of the Final Approval Order and Judgment, including, without limitation, statutory, constitutional, contractual, and/or common law claims for any antitrust violations under California or Federal law, including, but not limited to, vertical price fixing, lost profits, breach of contract, unfair competition, and treble damages; any claims under the California Labor Code and applicable Industrial Welfare Commission Orders including but not limited to claims based on Settlement Class Members' alleged misclassification as independent contractors, for unpaid regular and/or overtime wages, meal period premiums, rest period premiums, restitution, expenses, interest, liquidated damages,

11

punitive damages, interest, attorneys' fees, litigation costs, restitution, and/or statutory and civil penalties (including but not limited to penalties for failure to pay wages, underpayment of wages, late payment of wages, failure to provide accurate itemized statements or maintain records, waiting time penalties, and civil penalties (including civil penalties under the Private Attorneys' General Act)), including, but not limited to, claims arising out of the California Cartwright Act commencing with California Business and Professions Code section 16600, California Labor Code sections 201, 202, 203, 204, 226, 226.2, 226.7, 226.8, 266.8, 510, 512, 515, 558, 1174, 1182.12, 1194, 1197, 1198, 2802, 2699, et seq., and applicable IWC Wage Orders, between July 1, 2020 and the date the Court grants final approval of the Settlement; and any claim under the California Unfair Business Practices Act for related violations.

(Settlement Agreement, § 1.27.)

### 3. Class Notice

The proposed Class Notice is attached as Exhibit A to the Settlement Agreement. The Settlement Agreement provides a timeline for the Settlement Administrator's distribution of the Class Notice and for any Class Members' objections, requests for exclusions, or disputes, as follows:

- Defendant will provide the Class Information to the Settlement Administrator within 20 days after entry of the Preliminary Approval Order (Settlement Agreement, § 3.4.2);

- Within 14 days of the deadline for Defendant to provide the Class Information to the Settlement Administrator, the Settlement Administrator will mail the Class Notice to the Class Members (*id*., § 3.4.4);

- The deadline for Class Members to dispute Defendant's records, to submit a Request for Exclusion (i.e., to opt out of the Settlement), or to object to the Settlement, will be 60 calendar days after the Settlement

1  Administrator mails the Class Notice (the "Response Deadline") (*id.*, §§
2  1.30, 3.6, 3.7, 3.8).

3  **II.**
4  **CONDITIONAL CERTIFICATION AND PRELIMINARY APPROVAL OF**
5  **THE SETTLEMENT ARE WARRANTED**

6  **A.    Legal Standard**

7  The Ninth Circuit has a strong judicial policy that favors settlements in class
8  actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). There
9  is a three-step process for approving a class-action settlement: (1) preliminary
10  approval of the proposed settlement; (2) dissemination of notice of the settlement to
11  class members; and (3) a final approval hearing. *See Manual for Complex Litigation*
12  § 21.63 (4th ed. 2004). At the preliminary-approval stage, a reviewing court must
13  engage in two separate inquiries: (1) whether the proposed class meets the
14  certification requirements, and (2) whether the proposed settlement is
15  "fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938,
16  952 (9th Cir. 2003). The reviewing court considers whether it is likely to approve of
17  the proposal and certify the class. Fed. R. Civ. P. 23(e)(1)(B).

18  **B.    Certification of the Class for Purposes of Settlement is Appropriate**

19  "The first step in considering whether preliminary approval of the Settlement
20  Agreement should be granted is to determine whether a class can be certified." *Lim*
21  *v. Transforce, Inc.*, No. 19-CV-04390-JAK (AGRx), 2022 WL 17253907, at *6 (C.D.
22  Cal. Nov. 15, 2022). Here, Plaintiffs request certification of the following Class for
23  purposes of settlement only:

24  **Class**

25  All persons or entities who/that are or were signatories to an agreement
26  with Defendant for the sale and distribution of Defendant's Product
   within California during the Class Period [July 1, 2020 through and
27  including the Preliminary Approval Date], in addition to their owners,
   proprietors, partners and/or members.
28

13

1  Settlement Agreement, § 1.1.

2      As set forth below, certification is proper under Rule 23(a) and (b)(3).

3          1.    The Rule 23(a) Requirements are Met

4      The prerequisites for certification under Rule 23(a) – numerosity,

5  commonality, typicality, and adequacy – are satisfied here, as shown below.

6              a.    Numerosity

7      Rule 23(a)(1) requires that a class be "so numerous that joinder of all members

8  is impracticable." Fed. R. Civ. P. 23(a)(1). "As a general matter, courts have found

9  that numerosity is satisfied when class size exceeds 40 members, but not satisfied

10  when membership dips below 21." *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D.

11  Cal. 2000). Here, the Class is estimated to consist of 785 members. (Cardone Decl.,

12  ¶ 13.) Accordingly, the numerosity requirement is satisfied.

13              b.    Commonality

14      Rule 23(a)(2) requires that there be "questions of law or fact common to the

15  class." Fed. R. Civ. P. 23(a)(2). "[F]or purposes of Rule 23(a)(2), even a single

16  common question will do." *In re Packaged Seafood Products Antitrust Litigation*,

17  Case No. 3:15-md-02670-DMS-MDD, 2022 WL 4283551, at *4 (S.D. Cal. Jan. 26,

18  2022) (internal quotation marks and citations omitted).

19      Here, there are many questions of law and/or fact common to the Class,

20  including whether Defendant: wrongfully classified Class Members as independent

21  contractors, failed to pay Class Members overtime wages, failed to provide Class

22  Members compliant meal periods and rest breaks and/or pay premiums for meal

23  periods and rest breaks not provided, failed to pay Class Members minimum wage,

24  failed to provide itemized wage statements to Class Members, failed to reimburse

25  Class Members' business expenses, and/or failed to keep accurate payroll records.

26  (*See* FAC, ¶ 2.) Accordingly, there are questions of law and fact common to the class.

27  *See, e.g., Lim, supra*, 2022 WL 17253907, at *7 (finding commonality where "a

28  central question is whether these delivery drivers are properly categorized as

14

employees or independent contractors"); *Cordova v. BAE Systems Technology Solutions & Services, Inc.*, Case No. 20-cv-2425 JLS (MDD), 2022 WL 298365, at *5 (S.D. Cal. Feb. 1, 2022) (finding commonality where common questions include whether defendants complied with laws as to overtime, meal and rest periods, wage statements, reimbursement of business expenses, and timely compensation upon termination).

### c.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement is "permissive" and requires only that the named plaintiff's claims "are reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Courts have consistently found the typicality requirement satisfied in employment misclassification class actions. *See, e.g., Lim v. Transforce, Inc.*, 19-cv-04390 JAK (AGRx), 2022 WL 17253907, at *8 (C.D. Cal. Nov. 15, 2022) (typicality requirement was met where plaintiff alleged injuries that "arise from the alleged misclassification of Class Members as independent contractors rather than employees"); *Kimbo v. MXD Group, Inc.*, Case No. 2:19-cv-00166-WBS (KJN), 2020 WL 4547324, at *3 (E.D. Cal. Aug. 6, 2020) (typicality satisfied where "[t]he work performed by the class members and the work performed by plaintiff is the same, and they share the same injuries from being misclassified as independent contractors rather than employees"); *Cifuentes v. CEVA Logistics U.S., Inc.*, 16-cv-01957-H-DHB, 2017 WL 2537247, at *2 (S.D. Cal. June 12, 2017) (typicality found where "Plaintiff and the purported class members held the same position and claim

15

1  the same injury—misclassification as an independent contractor resulting in
2  nonpayment for hours worked, working without rest breaks and meal periods as
3  required by law, and a lack of reimbursements for out-of-pocket expenses").

4       Here, Plaintiffs, like the other Class Members, were distributors for Defendant.
5  As in the cases cited in the preceding paragraphs, Plaintiffs' claims are typical of the
6  Class because the claims arise out of the same misconduct and injuries: alleged
7  misclassification as an independent contractor resulting in a wide variety of damages,
8  including, inter alia, nonpayment of overtime and minimum wages, failure to provide
9  meal periods, rest breaks, and itemized wage statements, failure to reimburse
10  business expenses, and failure to keep accurate payroll records. (FAC, ¶ 2.)

11  d.    Adequacy of Representation

12       Rule 23(a)(4) requires the class representatives to "fairly and adequately
13  protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A finding of adequacy
14  involves a two-party inquiry: "(1) do the named plaintiffs and their counsel have any
15  conflicts of interest with other class members and (2) will the named plaintiffs and
16  their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150
17  F.3d at 1020. "Adequate representation depends on, among other factors, an absence
18  of antagonism between representatives and absentees, and sharing of interest between
19  representatives and absentees." *Ellis v .Costco Wholesale Corp.*, 657 F.3d 970, 985
20  (9th Cir. 2011). "Adequacy of representation also depends on the qualifications of
21  counsel." *Sali v. Coronoa Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018). "[T]he
22  named representative's attorney [must] be qualified, experienced, and generally
23  capable to conduct the litigation." *Id.*

24       Here, there are no known or apparent conflicts of interest between Plaintiffs
25  and the Class Members (or between Class Counsel and the Class Members). Rather,
26  as stated above, Plaintiffs held the same positions and suffered the same forms of
27  injury as the Class Members. Further, Plaintiffs have already dedicated a significant
28  amount of their time and attention to prosecuting this Class Action on behalf of the

Class Members. (Cardone Decl., ¶ 11.) For example, Plaintiffs have provided significant documentation and information to Class Counsel, participated in numerous in-person meetings and phone calls, and assisted the experts with their damages analyses. (*Id.*) Moreover, Plaintiff Moch traveled to San Francisco for mediation with Mr. Piazza and liaised with the other Plaintiffs and Class Members throughout the mediation. (*Id.*; Moch Decl., ¶ 6.)

Class Counsel have extensive experience litigating employment class and PAGA actions, on behalf of both plaintiffs and defendants. (Cardone Decl., ¶ 14.)

Accordingly, Rule 23(a)(4) is satisfied.

### 2.    Rule 23(b)(3) is Met

"In addition to meeting the conditions imposed under Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2), or (3)." *Hanlon*, 150 F.3d at 1022. Here, the Settlement Class is maintainable under Rule 23(b)(3), which provides for certification of a class where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### a.    Common Issues Predominate

In evaluating whether common issues predominate, "more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). "[E]ven if just one common question predominates, the action may be considered proper under Rule 23(b)(3) even though other important matters will be tried separately." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557 (9th Cir. 2019). Further, the requirements of Rule 23(b)(3) "must be considered in light of the reason for which certification is sought—litigation or settlement." *Id.* at 558. A class

17

may be certifiable for settlement even though it "may not be certifiable for litigation" where "the settlement obviates the need to litigate individualized issues that would make a trial unmanageable." *Id*.

Here, with regard to Plaintiffs' Cartwright Act claim that Defendant allegedly conspired to fix prices, "[m]ost courts hold that when a conspiracy to fix prices has been alleged, common questions predominate over any questions affecting only individual class members." *B.W.I. Custom Kitchen v. Owens-Illinois*, 191 Cal.App.3d 1341, 1348 (1987).

With regard to Plaintiffs' employment claims, those claims turn in part on the chief issue of whether Plaintiffs (and the Class) were wrongfully classified as independent contractors. Many courts have held that common issues predominate in class actions involving claims that delivery drivers were misclassified as independent contractors. *See, e.g., Lim, supra*, 2022 WL 17253907, at *9; *Johnson v. Serenity Transp., Inc.*, No. 15-cv-02004-JSC, 2018 WL 3646540, at *11 (N.D. Cal. Aug. 1, 2018).

Accordingly, common issues predominate over individual ones.

b.     Class Settlement is Superior to Individual Actions

As stated above, in addition to showing that common issues predominate, Rule 23(b)(3) also requires a showing that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This issue is evaluated by considering the following factors: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id*. However, in the context of a class action settlement, "courts need not consider the Rule 23(b)(3) considerations regarding

manageability of the class action, as settlement obviates the need for a manageable trial." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 318 (C.D. Cal. 2016).

Here, the class action is a superior form of litigation. It is estimated that there are 785 members of the Class. It would be impractical, and not cost-effective, for Class Members to bring individual actions. The claims turn on the same basic legal questions for all Class members and, absent certification for settlement purposes, it is unlikely that many of the Class members would be able to seek redress for their losses. Further, there is no other litigation about these claims pending. Accordingly, the superiority requirement is satisfied.

**C.    The Class Action Settlement is Fair, Reasonable, and Adequate**

Before approving a proposed class action settlement, a court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). Such an evaluation is made in the context of the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In determining whether a settlement is "fair, reasonable, and adequate," the court considers whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).

"At the preliminary approval stage, the Court only determines whether it will

19

'likely be able to' grant final approval of the settlement." *Victorino v. FCA US LLC*, No. 16-cv-1617-GPC (JLB), 2023 WL 3296155, at *3 (quoting Newberg & Rubenstein on Class Actions § 13:13).

### 1.   Adequate Representation

Rule 23(e)(2) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). The requirements of Rule 23(a)(4) and Rule 23(e)(2) are similar, if not redundant. *See*, *e.g.*, *Hilsey v. Ocean Spray Cranberries, Inc.*, Case No. 3:17-CV-2335-GPC-MDD, 2020 WL 520616, at *5 (S.D. Cal. Jan. 31, 2020).

Here, for the same reasons that Rule 23(a)(4) is satisfied, Rule 23(e)(2) is also met. Plaintiffs and Class Counsel have adequately represented the Class. Class Counsel have significant experience prosecuting and defending employment misclassification class actions, and Class Counsel asserts that the Settlement reached here is an excellent result for the Settlement Class Members. (Cardone Decl., ¶ 14.) Accordingly, Rule 23(e)(2) is satisfied.

### 2.   The Settlement was Negotiated at Arm's Length

The settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). It was reached after a full-day mediation with nationally-recognized mediator, Antonio Piazza, Esq. (Cardone Decl., ¶ 10.) Where the settlement agreement is the product of mediation with an experienced mediator, use of the experienced mediator "indicates that the settlement was properly the product of arms-length negotiation." *Cody v. SoulCycle Inc.*, Case No. 15-cv-6457-MWF (JEMx), 2017 WL 11628587, at *5 (C.D. Cal. June 22, 2017). Indeed, numerous courts have granted preliminary approval where the settlement was reached through mediation with the same mediator used here, Antonio Piazza. *See*, *e.g.*, *Id.*; *Kimbo v. MXD Group, Inc.*, Case No. 2:19-cv-00166 WBS KJN, 2021 WL 492493, at *4 (E.D. Cal. Feb. 10, 2021); *Perkins v. LinkedIn Corporation*, Case No. 13-cv-04303-LHK, 2015 WL 13357952, at *2 (N.D. Cal. Sep. 15, 2015); *Harris v. Vector Marketing Corp.*, Case No. 08-cv-

5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (granting preliminary approval and noting Mr. Piazza's "significant experience mediating complex civil disputes").

### 3. The Relief Provided for the Class is Adequate

The Settlement Agreement provides for a Maximum Settlement Amount of $930,000. Assuming the Court approves the highest potential amounts requested for the Class Counsel Award ($170,000), Class Counsel Costs ($49,743.84), Enhancement Awards ($1000 x 5), Settlement Administration Costs ($20,000), Translation Provider Costs ($2,000), and LWDA Payment ($15,000), the Net Settlement Amount will be $665,256.16.

Class Counsel respectfully submits that this is an excellent result for the Class, taking into account the potential risks and other factors set forth in Rule 23(e)(2)(C), as discussed below.

### a. The costs, risks, and delay of trial and appeal

Here, a potential risk to Plaintiffs' continued pursuit of this action as a class action is Defendant's position that Plaintiffs agreed to arbitration and class-action waivers by signing the SDDAs. Defendant has stated that, absent settlement, Defendant will move to compel arbitration and force Plaintiffs into individual arbitrations, thus precluding any classwide recovery. Class Counsel believes Plaintiffs would have strong arguments in opposition to any such motion to compel arbitration – including, among other arguments, that Plaintiff Sophamany Moch opted out of arbitration, that others did not even sign the SDDAs, and that the arbitration and class-action-waiver provisions are unenforceable due to unconscionability. Nonetheless, Class Counsel and Plaintiffs recognize that there are risks involved with regard to Defendant's arbitration and class-action-waiver arguments, and that, at a minimum, Defendant's pursuit of such arguments would significantly delay and increase the costs of litigation.

1    Further, while Plaintiffs and Class Counsel are confident in the merits of
2    Plaintiffs' claims, there are uncertainties and risks in litigation, and Defendant's
3    experienced counsel would no doubt raise a vigorous defense should litigation
4    proceed, and would likely appeal any victory for Plaintiffs at the trial-court level.
5    Plaintiffs and Class Counsel have also noted the well-funded efforts to change the
6    current misclassification law in California in a way that could make it more difficult
7    for them to prevail on their misclassification claims.

8    Based on the foregoing, and the risks, costs and delay inherent in litigation,
9    Class Counsel believes that the proposed Settlement provides substantial benefits to
10   the Class.

11             b.    The effectiveness of any proposed method of distributing
12                   relief to the class, including the method of processing class-
13                   member claims

14   Here, the proposed method of processing claims and distributing relief to the
15   Settlement Class is straightforward. The Settlement Agreement proposes that relief
16   to the Settlement Class Members will be distributed via U.S. Mail to each Member's
17   last known address (or forwarding address, or address obtained after a skip-trace).
18   (Settlement Agreement, § 3.13.) Further, there is no requirement of an opt-in
19   procedure or claim form. Each Settlement Class Member who does not opt out will
20   automatically receive payment.

21   Further, payment will be made to Settlement Class Members primarily based
22   on their respective gross sales reflected in Defendant's records. (*Id.*, §§ 1.8, 3.13.5.)
23   Settlement Class Members who disagree with these amounts will have the
24   opportunity to dispute the amounts. (*Id.*, § 3.6.)

25             c.    The terms of any proposed award of attorney's fees,
26                   including timing of payment

27   The Settlement Agreement provides that Class Counsel may request an
28   Attorneys' Fees Award not to exceed $170,000, which is approximately 18% of the

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
CASE NO. 23-cv-212-MMA (AHG)

Maximum Settlement Amount of $930,000. The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). Here, given that Class Counsel will request an Attorneys' Fees Award that is lower than the typical range accepted by the Ninth Circuit, the amount of fees to be requested supports preliminary approval. *See In re BofI Holding, Inc. Securities Litigation*, Case No. 3:15-cv-02324-GPC-KSC, 2022 WL 2068424, at *10 (S.D. Cal. June 8, 2022) ("The Court need not determine at the preliminary approval stage whether it will ultimately approve an award in the range of the 25% set out by Plaintiff. It is sufficient for the Court to conclude that this is not a situation in which the attorney's fee estimate in the Settlement Agreement is so out of proportion with the relief provided to the class that it calls into question the fairness of the proposed settlement.").

Further, there is no "kicker" or "reverter" clause in the Settlement Agreement that would return unawarded fees to the defendant, rather than the class. *See Briseno v. ConAgro Foods, Inc.*, 998 F.3d 1014, 1023 (9th Cir. 2021). Rather, the Settlement Agreement expressly provides that "[a]ny portion of the requested Class Counsel Award that is not awarded to Class Counsel shall be a part of the Net Settlement Amount and distributed to Settlement Class Members as provided in this Agreement." (Settlement Agreement, § 1.3.) *See Sengvong v. Probuild Company LLC*, 3:19-cv-2231-MMA-JLB, 2021 WL 4504620, at *6 (S.D. Cal. Oct. 1, 2021) ("[T]he Agreement in this case does contain a 'clear sailing' provision. [Citation.] However, the parties also agreed that if the Court approves a lesser attorneys' fee award, the difference will revert to the Net Settlement Amount and therefore the Settlement Class [citation], thus ameliorating the collusive concerns addressed in *Briseno*.")

Accordingly, the terms of the proposed attorneys' fees award are reasonable and support approving the Settlement Agreement.

23

d.  Any agreement required to be identified under Rule 23(e)(3).

Here, the only agreement required to be identified under Rule 23(e)(3) is the Settlement Agreement, which is attached as Exhibit 1 to the Cardone Declaration.

4.  The Settlement Treats Class Members Equitably Relative to Each Other.

The Settlement Agreement treats the Class Members equitably relative to each other. Fed. R. Civ. 23(e)(2)(D). Each Class Member's Individual Settlement Payment is based on the Member's sales, as follows:

> Each Settlement Class Member's share of the Net Settlement Amount shall be determined as follows: (i) 20% of the Net Settlement Amount will be divided equally among all of the Settlement Class Members; and (ii) the remaining 80% of the Net Settlement Amount will be distributed based on Settlement Class Members' sales to chain stores in California for their respective routes, as follows: 80% of the Net Settlement Amount will be divided by the total gross sales to chain stores by all Settlement Class Members; the resulting figure was the unit value per gross sale dollar. The unit value per gross sale dollar will be multiplied by each Settlement Class Member's Compensable Gross Sales to chain stores in California from July 1, 2020 to the date the Court grants preliminary approval of the Settlement to yield their pro rata share of the Net Settlement Amount. The payment of (i) and (ii) above will be the "Individual Settlement Payment.

(Settlement Agreement, § 3.13.5.)

Given that all Settlement Class Members were distributors for Defendant, and thus had sales to chain stores, the method of distribution of the Net Settlement Amount to each Settlement Class Members ensures the Members are treated equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D).

## III.

## THE PROPOSED CLASS NOTICE IS THE BEST PRACTICABLE

"[T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be

24

identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." *Id.* Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard." *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

Here, the proposed Class Notice is attached as **Exhibit A** to the Settlement Agreement, and the manner of distribution is described above in Section II.C.4. Plaintiffs submit that the proposed Class Notice and proposed manner of distribution meet the requirements of Rule 23 and due process.

## IV.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Motion.

Respectfully Submitted,
DUNN DESANTIS WALT & KENDRICK, LLP

By:     */s/ David D. Cardone*
James A. McFaul
Bradley A. Lebow
David D. Cardone

Dated:  June 16, 2023

Attorneys for Plaintiffs, Proposed Class Members, and Aggrieved Employees