1
2
3
4
5
6
7    **UNITED STATES DISTRICT COURT**
8    **SOUTHERN DISTRICT OF CALIFORNIA**
9

| | |
|---|---|
| DEXTER'S LLC, et al., | Case No. 23-cv-212-MMA-AHG |
| Plaintiffs, | **ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND** |
| v. | |
| GRUMA CORPORATION, | [Doc. No. 12] |
| Defendant. | **GRANTING MOTION FOR ATTORNEY'S FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARD** |
| | [Doc. No. 13] |

Dexter's LLC, Franco Food Distribution d/b/a Bombins, Gastelum Food LLC, Sophamany Moch, Gerardo Fuente, Sr., Gerardo Fuentes, Jr., Jorge Franco, and Mayte Gastelum (collectively, "Plaintiffs") bring this putative wage and hour class action against Defendant Gruma Corporation ("Defendant"). Plaintiffs move for final approval of a class settlement pursuant to Federal Rule of Civil Procedure 23(e) and for an award of attorneys' fees and costs pursuant to Rule 23(h), as well as a class representative service award. *See* Doc. Nos. 12, 13. Defendant does not oppose Plaintiffs' motions, and the Court preliminarily approved the class settlement. *See* Doc. No. 11. In advance of

the Final Approval Hearing, the Court issued tentative rulings on the motions.  *See* Doc. No. 16.  On December 11, 2023, the Court held a Final Approval Hearing on these matters pursuant to Federal Rule of Civil Procedure 23(e)(2).  *See* Doc. No. 33.  For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion for final approval of the class settlement and **GRANTS** Plaintiffs' motion for attorneys' fees, costs, and a class representative award.

## BACKGROUND

Defendant is a manufacturer of corn and flour tortillas and other food products and operates out of a tortilla plant in Los Angeles.  Doc. No. 12-1 at 7.[1]  Plaintiffs are distributors who signed a "Store Door Distributor Agreement" with Defendant.  *Id.*  As a result, Plaintiffs were responsible for "distributing Defendant's products to third-party retail outlets, stocking the outlet's shelves with Defendant's products, and ensuring that the shelves remain adequately stocked with Defendant's products."  *Id.*  Generally speaking, Plaintiffs assert that Defendant misclassified them and other similarly situated persons and entities as independent contractors, when they should have been classified as employees.  *Id.* at 8.

On January 5, 2022, Plaintiffs filed a PAGA Notice with the California Labor and Workforce Development Agency ("LWDA").  *Id.*; Doc. No. 12-2 ("Cardone Decl.") Ex. 2.  On August 12, 2022, the parties participated in a full-day, in-person mediation with "highly-regarded mediator, Antonio Piazza, Esq."  *Id.* at 6.  The parties reached a settlement at the mediation, which was later memorialized in the Settlement Agreement.  *Id.* at 9; *see also* Cardone Decl. Ex. 1 (the "Settlement Agreement").

On February 3, 2023, Plaintiffs filed a putative class action complaint.  *See* Doc. No. 1.  On February 21, Plaintiffs filed a First Amended Complaint.  *See* Doc. No. 3 ("FAC").  Plaintiffs assert the following 12 claims under California law: (1) failure to pay

---

[1] Citations refers to the pagination assigned by the CM/ECF system unless otherwise indicated.

wages at the time of discharge; (2) failure to pay minimum wages; (3) failure to pay overtime wages; (4–5) failure to prove meal and rest periods; (6) failure to provide itemized wage statements; (7) waiting time penalties; (8) illegal deductions; (9) failure to reimburse expenses; (10) unfair business practices; (11) violation of the Cartwright Act; and (12) violation of the Private Attorneys General Act, Cal. Labor Code § 2698 *et seq.* ("PAGA").

Less than one month after filing the FAC, the parties jointly moved to stay the entire action pending approval of the Settlement Agreement.  Doc. Nos. 4, 6.

### THE SETTLEMENT AGREEMENT

The Settlement class ("Class") consists of all persons or entities who/that are or were signatories to a distribution agreement with Defendant during the Class Period. Settlement Agreement at 14.  The Class Period is from July 1, 2020 through August 1, 2023.  *Id.* at 15.  There are 729 Class members.  Doc. No. 15 ("Hoelscher Decl.") ¶¶ 4–5.

Defendant will pay a total sum of $930,000 (the "Gross Settlement Amount").  *Id.* at 17.  The parties have allocated $20,000 of the Gross Settlement Amount as penalties under PAGA ("PAGA Payment").  *Id.*  This represents roughly 2% of the Gross Settlement Amount.

As to deductions, the Settlement Agreement provides for the following: (1) Class Counsel Fee Award not to exceed $170,000; (2) Class Counsel Costs Award not to exceed $49,743.84; (3) Class Representative Enhancement Award of $1,000 per Plaintiff, which would total $8,000; (4) Settlement Administration Costs not to exceed $20,000; (5) Translation Provider Costs not to exceed $2,000; and (6) $15,000 of the PAGA penalty to LWDA.  *Id.* at 33–36.

However, Plaintiffs move for the following awards: (1) Class Counsel Fees of $170,000; (2) Class Counsel Costs of $49,696.40; (3) Class Representative Enhancement Award of $5,000 in total; (4) Settlement Administration Costs of $13,719; (5) Translation Provider Costs of $651.72; and (6) $15,000 of the PAGA penalty to LWDA.  The parties agree that no portion of the Gross Settlement Amount will revert to Defendant.  *Id.*  After

deductions, the current estimated net settlement amount is $675,932.88 (the "Net Settlement Amount").

The Net Settlement Amount will be distributed as follows: 20% divided equally among all Class Members; the remaining 80% "will be divided by the total gross sales to chain stores by all Settlement Class Members; the resulting figure was the unit value per gross sale dollar. The unit value per gross sale dollar will be multiplied by each Settlement Class Member's Compensable Gross Sales to chain stores in California from July 1, 2020 to the date the Court grants preliminary approval of the Settlement to yield their pro rata share of the Net Settlement Amount." Settlement Agreement at 33. The average payment will be $897.65, the median will be $775.62, and the highest payment will be $4,762.92. Hoelscher Decl. ¶ 7.

The Court has received no objections to the Settlement or oppositions to Plaintiffs' motions.

## FINAL APPROVAL OF CLASS SETTLEMENT

### A.   Legal Standard

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). A court considers several factors in determining whether a Settlement Agreement is "fair, reasonable, and adequate" under Rule 23(e). The Rule provides that a court should consider whether: (1) "the class representatives and class counsel have adequately represented the class"; (2) "the proposal was negotiated at arm's length"; (3) "the relief provided for the class is adequate," taking into consideration the risks associated with

continued litigation, the effectiveness of distributing the proposed relief to the class, the terms of any proposed attorneys' fees, and the underlying settlement agreement; and (4) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

Judicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). To that end, the Ninth Circuit has identified additional factors to consider, including: (1) the strength of the case; (2) "the risk, expense, complexity, and likely duration of further litigation"; (3) "the risk of maintaining class action status throughout the trial"; (4) the settlement amount; (5) the stage of the proceedings; (6) "the experience and views of counsel"; (7) whether there is a "governmental participant"; and (8) "the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003), *overruled in part on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010)).

**B.    Discussion**

The Court proceeds by addressing Rule 23(e)(2)'s "fair, reasonable, and adequate" factors and the related factors noted by the Ninth Circuit.[2]

   *1.    Adequate Representation*

Rule 23(e)(2) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Relatedly, the Court also considers the experience and views of counsel. *See Staton*, 327 F.3d at 959 (quoting *Molski*, 318 F.3d at 953). "'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the

---

[2] Because of the overlap between the Rule 23(e)(2)'s factors and the Ninth Circuit's additional factors, the Court folds the Ninth Circuit's factors into its analysis of Rule 23(e)(2).

underlying litigation.  This is because '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.'"  *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citation omitted) (first quoting *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.); and then quoting *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Here, Class Counsel includes Bradley A. Lebow, David D. Cardone, and James A. McFaul, all experienced trial attorneys who have extensive experience litigating wage and hour class actions.  *See* Cardone Decl. ¶¶ 2, 4–9; Doc. No. 12-3 ("Lebow Decl.") ¶¶ 3–4.  Further, Plaintiffs, as representatives of the Class, have been "instrumental" in prosecuting this action and achieving a resolution for the Class by promptly responding to requests for material and information and attending the mediation.  Cardone Decl. ¶ 25.

Based upon the sworn declarations and the pertinent other portions of the record, the Court finds that both Plaintiffs and Class Counsel have adequately represented the Settlement Class Members and therefore this factor favors approval of the Settlement Agreement.

### 2.   *Arm's Length Negotiation*

Rule 23(e)(2) requires the Court to consider whether "the proposal was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  Courts must ensure settlements are not the product of collusion or other conflicts of interest.  *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 947; *Staton*, 327 F.3d at 960.  "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."  *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528.  The Ninth Circuit has outlined several circumstances that may indicate collusion:

(1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "when  the  parties  negotiate  a  'clear  sailing'  arrangement

providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund."

*Ferrell v. Buckingham Prop. Mgmt.*, No. 1:19-cv-00332-LJO-SAB, 2020 WL 291042, at *20 (E.D. Cal. Jan. 21, 2020), *report and recommendation adopted*, 2020 WL 4364647 (E.D. Cal. July 30, 2020) (quoting *In re Bluetooth*, 654 F.3d at 947); *see also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 569 (9th Cir. 2019).

The parties reached this Settlement after an extensive investigation and attending a full-day mediation with Antonio Piazza, Esq.  Class Counsel will not recover an unreasonable portion of the Gross Settlement Amount and no portion of that fund will revert to Defendant.  Accordingly, the Court finds that the arm's length negotiations favor approval of the Settlement Agreement.  *See, e.g.*, *Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018, 1052 (S.D. Cal. 2017) (finding the settlement to have been reached through arms-length negotiations where, among other things, counsel reached the agreement before Mr. Piazza, "a respected third-party mediator"); *see also Cody v. Soulcycle Inc.*, No. CV 15-6457 MWF (JEMx), 2017 U.S. Dist. LEXIS 234741, at *16 (C.D. Cal. June 22, 2017) (finding that the settlement was the product of arms-length negotiations where "the parties utilized experienced mediators to reach the settlement agreement" and engaged in meaningful discovery).

### 3.   Adequate Relief

Rule 23(e)(2) requires the Court to consider whether "the relief provided for the class is adequate" after assessing several factors, such as the risks associated with continued litigation, the effectiveness of proposed relief to the class, the terms of any proposed attorneys' fees, and the underlying settlement agreement.  Fed. R. Civ. P. 23(e)(2)(C).  To determine whether the relief is adequate and in assessing the other underlying subfactors, "the Court must balance the continuing risks of litigation (including the strengths and weaknesses of Plaintiffs' case), with the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery." *Baker*

1   *v. SeaWorld Entm't, Inc.*, No. 14-cv-02129-MMA-AGS, 2020 WL 4260712, at *6 (S.D.

2   Cal. July 24, 2020).   In particular,

> [t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.   In this respect, "[i]t has been held proper to take the bird in hand instead of a prospective flock in the bush."

8   *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 526 (quoting *Oppenlander*

9   *v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974)).

10                    a.    <u>Risks of Continued Litigation</u>

11         "In determining whether to approve a Settlement Agreement, the Court should also

12   consider the expense, complexity and likely duration of further litigation or delay of trial

13   and appeal."  *Baker*, 2020 WL 4260712, at *7 (citing Fed. R. Civ. P 23(e)(2)(C)(i)).

14   "Generally, unless the settlement is clearly inadequate, its acceptance and approval are

15   preferable to lengthy and expensive litigation with uncertain results."  *In re LinkedIn*

16   *User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) (quoting *Ching v. Siemens*

17   *Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014)).

18         Here, if the parties had not settled, Plaintiffs would have had to spend considerable

19   time and effort litigating formal discovery, class certification, and summary judgment.

20   While Plaintiffs are confident in the merits of their claims, the parties acknowledge that

21   continuing with this litigation would be protracted and expensive for both sides, *see*

22   Settlement Agreement at 23, and that there are uncertainties and risks to proceeding with

23   the action in light of Defendant's position that Plaintiffs signed arbitration agreements

24   excluding class-wide recovery and the evolving legal landscape of misclassification law

25   in California, *see* Doc. No. 12-1 at 18–19.   Accordingly, the Court finds that the strength

26   of the case, the costs associated with trial and appeal, the stage of the proceedings, and

27   the risk of maintaining class action status throughout the trial favor approval of the

28   Settlement Agreement.

b.      Effectiveness of Proposed Relief Distribution

In determining the effectiveness of distributing the proposed relief to the class and the processing of class claims, the Court should "scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims.  A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."  Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.

In this case, the Notice of Proposed Class Action Settlement provided as follows:

| OVERVIEW OF YOUR LEGAL RIGHTS AND OPTIONS UNDER THE SETTLEMENT | |
|---|---|
| **DO NOTHING** | Subject to the Court's final approval of the terms of the Settlement, you will receive a settlement payment (unless you timely provide a forwarding address to the Settlement Administrator) at the address where this notice was mailed, in exchange for which you will give up your claims in this case within the scope of the release set forth below. |
| **EXCLUDE YOURSELF** | If you submit a Request for Exclusion, which must be postmarked by **60-calendar days after settlement administrator mails class notice**, you will <u>not</u> receive a settlement payment but you will keep your claims against Defendant. |
| **OBJECT** | If you wish to object to the Settlement, you must submit a written objection, and supporting papers, to the Settlement Administrator that is postmarked no later than **60-calendar days after settlement administrator mails class notice**. |

Cardone Decl. at 50.

This method of distribution imposes no burden on the Settlement Class Members. Accordingly, the effectiveness of the proposed method of distributing relief to the Class favors approval of the Settlement Agreement.

c.      Terms of Proposed Attorney's Fees

In assessing whether the relief for a class is adequate, "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement."  Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment. "Ultimately, any award of attorney's fees must be evaluated under Rule 23(h), and no

rigid limits exist for such awards.  Nonetheless, the relief actually delivered to the class can be a significant factor in determining the appropriate fee award." *Id.*

This subfactor considers the "terms" of any proposed and agreed upon request for attorney's fees.  *See* Fed. R. Civ. P. 23(e)(C)(iii).  Here, the Settlement Agreement contains an attorney's fees provision which permits Class Counsel to apply for an attorneys' fees award of up to $170,000, which would be paid from the Gross Settlement Amount.  *See* Settlement Agreement at 34.  Class Counsel's entitlement to such award is ultimately contingent upon the corresponding motion for attorney's fees and costs, which is addressed in detail below.

The Court must be mindful when determining whether to approve a proposed attorney's fee award in the class action settlement context that "settlement class actions present unique due process concerns for absent class members." *Hanlon*, 150 F.3d at 1026.  Accordingly, "the district court has a fiduciary duty to look after the interests of those absent class members." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015).

> [C]ourts should scrutinize pre-class certification settlements because plaintiffs' counsel may collude with the defendant to strike a quick settlement without devoting substantial resources to the case. The potential for collusion reaches its apex pre-class certification because, among other things, (1) the court has not yet approved class counsel, who would owe a fiduciary duty to the class members; and (2) plaintiffs' counsel has not yet devoted substantial time and money to the case, and may be willing to cut a quick deal at the expense of class members' interests.
>
> In contrast, by the time a court has certified a class — the theory goes — the parties have vigorously litigated the dispute, reducing the chance that class counsel will settle on the cheap for a quick buck. By devoting substantial time and resources to the case, class counsel has skin in the game, guaranteeing his or her interest in maximizing the size of the settlement fund. Likewise, because a district court has appointed class counsel who owes a fiduciary duty to the class members, class counsel would be ethically forbidden from sacrificing the class members' interests.

*Briseño v. Henderson*, 998 F.3d 1014, 1024–25 (9th Cir. 2021) (internal citations omitted).

1    Here, the parties reached their Settlement prior to class certification.  This requires

2  the Court to take on the fiduciary role that would ordinarily fall to Class Counsel.  *See*

3  *Allen*, 787 F.3d at 1223.  Upon review, the Court does not find any evidence of collusion

4  but the Settlement Agreement in this case does contain a "clear sailing" provision.  *See*

5  Settlement Agreement at 34.  However, the parties also agreed that if the Court approves

6  a lesser attorney's fee award, the difference will revert to the Net Settlement Amount and

7  therefore the Settlement Class, *see id.* at 34, thus ameliorating the collusive concerns

8  addressed in *Briseño*.

9              d.     Underlying Settlement Agreement

10    "It is well-settled law that a proposed settlement may be acceptable even though it

11  amounts to only a fraction of the potential recovery that might be available to the class

12  members at trial."  *Rodriguez v. Bumble Bee Foods, LLC*, No. 17-cv-2447-MMA

13  (WVG), 2018 WL 1920256, at *4 (S.D. Cal. Apr. 24, 2018) (brackets omitted) (quoting

14  *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 527).  That is because a settlement

15  "embodies a compromise; in exchange for the saving of cost and elimination of risk, the

16  parties each give up something they might have won had they proceeded with litigation."

17  *Officers for Justice*, 688 F.2d at 624 (quoting *United States v. Armour & Co.*, 402 U.S.

18  673, 681 (1971)).  Further, the Ninth Circuit has held that the number of class members

19  who object to a proposed settlement is a factor to be considered.  *See Mandujano v. Basic*

20  *Vegetable Prod., Inc.*, 541 F.2d 832, 837 (9th Cir. 1976) (first citing *Bryan v. Pittsburgh*

21  *Plate Glass Co. (PPG Indus.)*, 494 F.2d 799, 803 (3d Cir. 1974); and then citing

22  *Amalgamated Meat Cutters & Butcher Workmen of N. Am., Local 340 v. Safeway Stores,*

23  *Inc.*, No. W-3915, 1972 WL 141, at *1 (D. Kan. Feb. 4, 1972)).  The absence of a large

24  number of objectors supports the fairness, reasonableness, and adequacy of the

25  settlement.  *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175

26  (S.D.N.Y. 2000); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979).

27    Here, the Settlement Agreement provides for a Gross Settlement Amount of

28  $930,000 for 729 Class Members and, after deducting various fees and costs, each Class

Member is estimated to recover, on average, $897.65.  Hoelscher Decl. ¶ 8.  Only eight Class Members timely opted out of the Settlement and no objections to the Settlement terms have been received by either the attorneys, the Settlement Administrator, or the Court.  Doc. No. 27-1 at 5; Doc. No. 26-1 at 18.  Accordingly, the Court finds that the underlying Settlement Agreement favors approval of the Settlement.

### e.   Conclusion

Based on the foregoing, the Court finds that on balance, the relief provided for the Class is adequate and favors approval of the Settlement Agreement.

### 4.   Equitable Treatment of Class Members

Rule 23(e)(2) requires the Court to consider whether "the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.  In assessing this factor, courts determine whether the settlement unreasonably gives preferential treatment to the class representatives or other class members.  *See Ferrell v. Buckingham Prop. Mgmt.*, 2020 WL 291042, at *23 (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

Twenty percent of the Net Settlement Amount will be distributed to the Class equally, the remaining 80% will be distributed pro rata based on sales to stores.  Doc. No. 12-1 at 21.  This is fair, reasonable, and adequate in light of the underlying harm and the lack of facts indicating certain Class Members suffered a disproportionate injury compared to others.  Further, as discussed below, the Court finds that Plaintiffs' requested Class Representative Service Award is reasonable.  Accordingly, the general equitable treatment of class members favors approval of the Settlement Agreement.

//

//

1   **C.      Conclusion**

2          Upon due consideration of the factors set forth above, the Court finds that the Class

3   Settlement is on balance "fair, reasonable, and adequate" under Rule 23(e)(2) and

4   therefore **GRANTS** Plaintiffs' motion for final approval of the Settlement.

5   **D.      PAGA Penalty**

6          Under PAGA, an "aggrieved employee" may bring an action for civil penalties for

7   labor code violations on behalf of himself and other current or former employees.  Cal.

8   Lab. Code § 2699(a).  A plaintiff suing under PAGA "does so as the proxy or agent of the

9   state's labor law enforcement agencies." *Arias v. Superior Ct.*, 95 Cal. Rptr. 3d 588, 600

10  (2009).  A PAGA plaintiff thus has "the same legal right and interest as state labor law

11  enforcement agencies" and the action "functions as a substitute for an action brought by

12  the government itself"; therefore, "a judgment in that action binds all those, including

13  nonparty aggrieved employees, who would be bound by a judgment in an action brought

14  by the government." *Id.*  A plaintiff bringing a representative PAGA action not only

15  owes a duty to their "fellow aggrieved workers," but "also owes responsibility to the

16  public at large; they act, as the statute's name suggests, as a private attorney general."

17  *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133–34 (N.D. Cal. 2016).

18         Under PAGA, civil penalties collected are distributed between the aggrieved

19  employees (25%) and the LWDA (75%).  Cal. Lab. Code § 2699(i).  Any settlement of

20  PAGA claims must be approved by the Court.  Cal. Lab. Code § 2699(l)(2).  The

21  proposed settlement must also be sent to the agency at the same time that it is submitted

22  to the court.  Cal. Lab. Code § 2699(l)(2).

23         While PAGA requires a trial court to approve a PAGA settlement, district courts

24  have noted there is no governing standard to review PAGA settlements.  *Sanchez*

25  *v. Frito-Lay, Inc.*, No. 1:14cv797-DAD-BAM, 2019 U.S. Dist. LEXIS 170556, at *31

26  (E.D. Cal. Sept. 30, 2019) (acknowledging the "absence of authority governing the

27  standard of review of PAGA settlements").  "'[N]either the California legislature, nor the

28  California Supreme Court, nor the California Courts of Appeal, nor the [LWDA] has

provided any definitive answer' as to what the appropriate standard is for approval of a PAGA settlement." *Jordan v. NCI Grp., Inc.*, No. EDCV 161701 JVS (SPx), 2018 U.S. Dist. LEXIS 25297, at *5 (C.D. Cal. Jan. 5, 2018) (quoting *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F. Supp. 3d 1074, 1075 (C.D. Cal. 2017)).  Consequently, some district courts have used the guidance provided by the LWDA in *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016).  *See Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019); *Sanchez*, 2019 U.S. Dist. LEXIS 170556, at *32.  In *O'Connor*, the LWDA commented,

> It is thus important that when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.

*O'Connor*, 201 F. Supp. 3d at 1133.  Based on LWDA's response in *O'Connor*, district courts have applied "a Rule 23-like standard" asking whether the settlement of the PAGA claims is "fundamentally fair, reasonable, and adequate." *Haralson*, 383 F. Supp. 3d at 972.

First, in accordance with the statutory requirements, Plaintiffs submitted the Settlement Agreement to the LWDA.  Lebow Decl. ¶ 9.  The Court finds it persuasive that the LWDA was permitted to file a response to the proposed Settlement and no comment or objection has been received.

The Settlement Agreement provides for a $20,000 PAGA penalty.  Plaintiffs' expert estimated a PAGA penalty range of approximately $28,427,000 to $53,227,000.  Doc. No. 20 at 2.  Nonetheless, as noted above, the $20,000 PAGA penalty represents roughly 2 percent of the Gross Settlement Amount, which is within the range of penalties approved by courts.  *See Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058, 1101 (N.D. Cal. 2019) (collecting cases in which settlements providing for $10,000 in PAGA

penalties were preliminarily or finally approved despite total settlement amounts of $900,000 and $6.9 million); *see also Alcala v. Meyer Logistics, Inc.*, No. CV 17-7211 PSG (AGRx), 2019 U.S. Dist. LEXIS 166879, at *26 (C.D. Cal. June 17, 2019) (collecting cases in which PAGA penalties within the zero to two percent rage were approved by courts).  Further, the Settlement Agreement provides that 75% of the PAGA Penalty will be paid to the LWDA and 25% will be paid to the PAGA Class, in accordance with California Labor Code § 2699(i).  Therefore, the Court finds that the Settlement Agreement's $20,000 PAGA penalty is reasonable, fundamentally fair, and adequate.

### ATTORNEY'S FEES AND COSTS

Plaintiffs also seek an award of attorney's fees and costs.  *See* Doc. No. 13. Plaintiffs request fees in the aggregate amount of $170,000, which is 18% of the Gross Settlement Amount, as well as $49,646.40 in litigation costs.  *Id.* at 8, 15.

**A.     Attorney's Fees**

*1.     Legal Standard*

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  And as mentioned above, in addition to the reasonableness inquiry mandated under Rule 23(h), "district courts must now consider 'the terms of any proposed award of attorney's fees' when determining whether 'the relief provided for the class is adequate'" pursuant to Rule 23(e).  *Briseño*, 998 F.3d at 1024 (quoting Fed. R. Civ. P. 23(e)(2)(C)(iii)). Importantly, "whether the attorneys' fees come from a common fund or are otherwise paid, the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper."  *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328 (9th Cir. 1999).

The Court has discretion in a common fund case such as this to choose either the lodestar method or the percentage-of-the-fund method when calculating reasonable

attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Under the percentage-of-recovery method, 25% of a common fund is the benchmark for fee awards. *See, e.g.*, *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id.* at 941 (citing *Staton*, 327 F.3d at 965).

Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. To guard against an unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any calculations done in one method against those of another method. *See id.* at 1050–51.

      *2. Discussion*

As noted above, Plaintiffs on behalf of Class Counsel request $170,000 in fees, or 18% of the Gross Settlement Amount. This amount is less than the Ninth Circuit's "benchmark" for a reasonable fee award under the percentage-of-recovery method. *See, e.g.*, *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 926 F.3d 539, 570 (9th Cir. 2019) (noting the 25% benchmark). As discussed below, it is also less than Class Counsel's fees would be if calculated using the lodestar method.

      a.   <u>Lodestar Calculation</u>

In order to determine the lodestar figure, the Court calculates the number of hours reasonably expended on the litigation and then multiplies that number by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The Court first considers whether Class Counsel's hourly rates are reasonable. A reasonable hourly rate is typically based upon the prevailing market rate in the community for "similar work performed by attorneys of comparable skill, experience,

and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

Here, Plaintiffs requests hourly rates ranging from $150 to $500 for paralegals, associates, and partners. In addition to the declarations of counsel, the Court relies on its own knowledge and experience of customary rates concerning reasonable and proper fees, *see Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011), and considers the relevant *Kerr* factors. *See Davis v. City of San Francisco*, 976 F.2d 1536, 1546 (9th Cir. 1992) (finding that district courts may consider the *Kerr* factors in determining an appropriate market rate). Recently, courts in this District have awarded hourly rates for work performed in civil cases by attorneys with significant experience anywhere in range of $550 per hour to more than $1000 per hour. *See, e.g.*, *Herring Networks, Inc. v. Maddow*, No. 3:19-cv-1713-BAS-AHG, 2021 U.S. Dist. LEXIS 23163, at *21 (S.D. Cal. Feb. 5, 2021) (finding $1150-$1050 to be reasonable rates for partners with more than 30 years of experience from a Top 100 law firm); *Kries v. City of San Diego*, No. 17-cv-1464-GPC-BGS, 2021 U.S. Dist. LEXIS 6826, at *26–27 (S.D. Cal. Jan. 13, 2021) (finding rates of $650 per hour for attorneys with more than 30 years of experience to be reasonable); *Sunbelt Rentals, Inc. v. Dubiel*, No. 20-cv-876-WQH-BGS, 2020 WL 6287462, at *2 (S.D. Cal. Oct. 27, 2020) (finding $405 rate per hour to be a reasonable rate for a partner in a breach of contract action); *Kailikole v. Palomar Cmty. Coll. Dist.*, No. 18-cv-2877-AJB-MSB, 2020 WL 6203097, at *3 (S.D. Cal. Oct. 22, 2020) (finding $550 rate per hour to be a reasonable rate for a partner in an employment action); *Vasquez v. Kraft Heinz Foods Co.*, No. 3:16-CV-2749-WQH-BLM, 2020 WL 1550234, at *1–2, 7 (S.D. Cal. Apr. 1, 2020) (approving of rates between $700 and $725 for attorneys with approximately 30 years of experience and rate of $550 for attorney with 12 years of experience); *San Diego Comic Convention v. Dan Farr Productions*, No. 14cv1865-AJB-JMA, 2019 WL 1599188, at *13–14 (S.D. Cal. Apr. 15, 2019) (finding reasonable the hourly rates of $760 for partners from a Top 100 law firm with 28-29 years of experience), *attorney fees aff'd* by 807 F. App'x 674 (9th Cir. Apr. 20, 2020);

1  *Kikkert v. Berryhill*, No. 14cv1725-MMA-JMA, 2018 WL 3617268, at *2 n.1 (S.D. Cal.

2  July 30, 2018) (an unopposed fee motion after a successful social security appeal, finding

3  de facto hourly rate of $943 reasonable, citing other decisions in the district approving

4  rates from $656 to $886). Therefore, the Court finds that Class Counsel's rates are

5  reasonable.

6          The Court next considers whether Class Counsel's expenditure of 729.4 hours on

7  this case is reasonable. "The fee applicant bears the burden of documenting the

8  appropriate hours expended in the litigation and must submit evidence in support of those

9  hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citing

10 *Hensley*, 461 U.S. at 433, 437). A district court "should defer to the winning lawyer's

11 professional judgment as to how much time he was required to spend on the case."

12 *Chaudhry*, 751 F.3d at 1111 (citing *Moreno*, 534 F.3d at 1112). However, the Court

13 "should exclude from [the] initial fee calculation hours that were not 'reasonably

14 expended.'" *Hensley*, 461 U.S. at 434. Hours are not "reasonably expended" if they are

15 "excessive, redundant, or otherwise unnecessary." *Id*.

16         Class Counsel has provided detailed billing records, which indicate that the hours

17 of work performed on this case were generally reasonable, necessary, and thus

18 compensable. *See* Lebow Decl. Ex 1. Moreover, "[t]he lodestar 'cross-check' need not

19 be as exhaustive as a pure lodestar calculation" because it only "serves as a point of

20 comparison by which to assess the reasonableness of a percentage award." *Fernandez v.*

21 *Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 U.S. Dist. LEXIS

22 123546, 2008 WL 8150856, at *14 (C.D. Cal. July 21, 2008). Accordingly, "the lodestar

23 can be approximate and still serve its purpose." *Id*. Accordingly, finding the hourly rates

24 identified above and hours expended to be reasonable, the Court agrees with Class

25 Counsel's calculation of the lodestar figure in this case of $316,524.00.

26              b.    Lodestar Crosscheck

27         This Court has previously acknowledged that "California courts routinely award

28 attorneys' fees of one-third of the common fund." *Espinosa v. Cal. Coll. of San Diego,*

*Inc.*, No. 17cv744-MMA (BLM), 2018 U.S. Dist. LEXIS 60106, at \*24 (S.D. Cal. Apr. 9, 2018) (quoting *Beaver v. Tarsadia Hotels*, No. 11-CV-01842-GPC-KSC, 2017 U.S. Dist. LEXIS 160214, 2017 WL 4310707, at \*9 (S.D. Cal. Sept. 28, 2017)) (collecting cases). But "[r]egardless of whether the Court uses the percentage approach or the lodestar method, the ultimate inquiry is whether the end result is *reasonable*." *Espinosa*, 2018 U.S. Dist. LEXIS 60106, at \*27-28 (emphasis added) (citing *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000)). "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award. Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable." *Vizcaino*, 290 F.3d at 1050.

"[A]n appropriate positive or negative multiplier reflect[s] . . . the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *In re Bluetooth*, 654 F.3d at 941–42 (quoting *Hanlon*, 150 F.3d at 1029). Likewise, a "percentage amount can . . . be adjusted upward or downward to account for any unusual circumstances involved in this case." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

The lodestar crosscheck supports the requested fee award in this case. The requested award of $170,000—18% of the Gross Settlement Amount—is less than the lodestar figure. Accordingly, the Court **GRANTS** Plaintiff's motion for an attorney's fee award of $170,000.

**B.    Costs**

Plaintiffs further request reimbursement of $49,696.40 in actual litigation costs expended by Class Counsel.

*1.    Legal Standard*

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Counsel is

entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting the case. *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391–92 (1970)); *see also Staton*, 327 F.3d at 974.

  2.   *Discussion*

Plaintiff seeks an award of costs totaling $49,696.40 expended by Class Counsel for filing fees, service fees, photocopying costs, postage, mediation fees, and other litigation related expenses. *See* Doc. No. 13-1 at 15–16. The Court finds that upon review, the requested award is reasonable in light of the itemized costs. Costs for service of process are taxable under 28 U.S.C. § 1920 as well as Civil Local Rule 54.1.b.1, which provides that "(c)osts for service of subpoenas are taxable as well as service of summonses and complaints." Filing fees are recoverable under 28 U.S.C. §1920(1). Additionally, the Ninth Circuit has held that an award to a prevailing party "can include reimbursement for out-of-pocket expenses including . . . travel, courier and copying costs." *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010). Other recoverable expenses include expenses related to discovery and expenses related to computerized research. *See Harris v. Marhoefer*, 24 F.3d 16, 19–20 (9th Cir. 1994) (noting that "expenses related to discovery" are recoverable); *Trs. Of Constr. Indus. & Laborers' Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258-59 (9th Cir. 2006) (holding that "reasonable charges for computerized research may be recovered."); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 646 (S.D. Cal. 2011) (holding that consulting fees as costs were reasonable because the evidence was necessary to negotiate a settlement).

Accordingly, because Class Counsel's out-of-pocket costs were reasonably incurred in litigating this action and were advanced by counsel for the benefit of the Class, the Court **APPROVES** reimbursement of litigation costs in the full amount requested. *See, e.g.*, *Fontes v. Heritage Operating, L.P.*, No. 14-cv-1413-MMA (NLS), 2016 WL 1465158, at *6 (S.D. Cal. Apr. 14, 2016).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLASS REPRESENTATIVE SERVICE AWARD**

Finally, Plaintiffs request a total incentive award of $5,000 for their service as the Class Representatives in this action.

**A.   Legal Standard**

"Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). "Such awards are discretionary." *Rodriguez v. W. Publ'g Corp.* (*Rodriguez I*), 563 F.3d 948, 958 (9th Cir. 2009). The Ninth Circuit has instructed district courts to "to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." *See Radcliffe*, 715 F.3d at 1163. Incentive awards that are disproportionate to the class's recovery risk a conflict of interest between a class representative's interests and the class's interests. *See id.* (quoting *Rodriguez I*, 563 F.3d at 959). This is especially relevant where retainer agreements require class counsel to request an incentive award or where the settlement agreement conditions the award on the class representatives' approval of the settlement. *See id.* at 1163–64. "Where . . . the class representatives face significantly different financial incentives than the rest of the class because of the conditional incentive awards that are built into the structure of the settlement, we cannot say that the representatives are adequate." *Id.* at 1165. Additionally, in evaluating the reasonableness of incentive awards,

> [t]he district court must evaluate their awards individually, using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation."

*Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Further, "class members can certainly be repaid from any cost allotment for their substantiated litigation expenses." *Id.* Taken together, courts examine the following factors when scrutinizing incentive awards on an individual basis in class action

-21-

settlements: (1) conflicts of interest between the class representative and the class in assessing the terms or disparity of an award, (2) actions taken by the class representative to protect the class's interest, (3) the benefit received by the class based on the class representative's actions, (4) the time and effort expended by the class representative, and (5) the class representative's reasonable fears of workplace retaliation.

**B.    Discussion**

Pursuant to the Settlement Agreement,

> Defendant agrees not to oppose or object to any application or motion by Plaintiffs to be appointed Class Representatives and for a Class Representatives' Enhancement Award. Class Counsel shall seek a Class Representatives' Enhancement Award for Class Representatives of up to One Thousand Dollars ($1,000) each. Defendant agrees not to oppose the motion by Plaintiffs for said Class Representatives' Enhancement Award, so long as the requested Class Representatives' Enhancement Award does not exceed this amount. Any portion of the requested Class Representatives' Enhancement Award that is not awarded shall be a part of the Net Settlement Amount to be distributed to Settlement Class Members as provided in this Agreement. The Class Representatives' Enhancement Award is intended to be in recognition of the Class Representatives' efforts and time as Class Representatives, and in consideration for the Class Representatives' execution of this Stipulation. The Enhancement Award shall be paid to Class Representatives from the Maximum Settlement Amount together with, and in addition to, their Individual Settlement Payments.

Settlement Agreement at 22–23.

Here, there are eight Plaintiffs.  However, as counsel explained at the Final Approval Hearing, only the five individual Plaintiffs, not their entities, seek an award. The $5,000 incentive award as requested by Plaintiffs in this case is well within the range of such awards in this Circuit.  After reviewing the declarations of both Class Counsel and Plaintiff, the Court agrees that an incentive award is appropriate here in light of the time and effort Plaintiffs expended on this litigation, the benefit obtained for the class, and the risks associated with bringing a class action lawsuit against a former employer. Accordingly, the Court **APPROVES** Plaintiffs' request for a $5,000 incentive award.

### CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiffs' motion for final approval of the class settlement and **GRANTS** Plaintiffs' motion for attorney's fees, costs, and a class representative enhancement award.

The Court **CERTIFIES** the Settlement Class for the purposes of the Settlement. The Court **APPROVES** the Settlement as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e). The Court **ORDERS** the parties to undertake the obligations set forth in the Settlement Agreement that arise out of this Order.

The Court **AWARDS** attorneys' fees to Class Counsel in the amount of **$170,000** and costs in the amount of **$49,696.40**.

The Court further **AWARDS** to Plaintiffs an incentive payment for work performed as the Class Representatives in the total amount of **$5,000**; $1,000 to each of the following: Sophamany Moch, Gerardo Fuentes, Sr., Gerardo Fuentes, Jr., Jorge Franco, and Mayte Gastelum.

The Court **AWARDS** settlement administration fees and costs to Atticus Administration, LLC in the total amount of **$14,370.72**.

The Court **DIRECTS** the Clerk of Court to enter a separate judgment of dismissal in accordance herewith, *see* Fed. R. Civ. P. 58(a), and to close the case.

Without affecting the finality of this Order, the Court maintains jurisdiction over this matter for purpose of enforcing the Judgment.

**IT IS SO ORDERED**.

Dated: December 19, 2023

HON. MICHAEL M. ANELLO
United States District Judge